UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM DURHAM, et al.,<br><br>Plaintiffs,<br><br>v.<br><br><br>SACHS ELECTRIC COMPANY, et al.,<br><br>Defendants. | Case No. 18-cv-04506-BLF<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS; GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Re: ECF 47, 53] |

This action arises out of Plaintiff William Durham and the proposed class members' employment by Defendant Sachs Electric Company ("Sachs") at the California Flats Solar Project. Now before the Court is Sachs' motions for judgment on the pleadings and for partial summary judgment. Motion for Judgment on the Pleadings ("MJOP"), ECF 47; Motion for Partial Summary Judgment ("MSJ"), ECF 53. The Court held a hearing on these motions on November 12, 2020. For the reasons explained during the hearing and discussed below, the Court GRANTS Sachs' motion for judgment on the pleadings and GRANTS IN PART and DENIES IN PART Sachs' motion for partial summary judgment.

**I.  BACKGROUND**

Durham is a California resident and former non-exempt employee of Sachs at the California Flats Solar Project Site (the "Project") in Monterey County, California. First Am. Compl. ("FAC"), ECF 13 ¶¶ 5, 9. Sachs and co-defendant McCarthy Building Companies, Inc. are Missouri corporations involved in the construction and development of photovoltaic solar projects.

1  FAC ¶¶ 6-8. Durham was employed at the Project from July 2016 to September 2017. Decl. of
2  William Durham ("Durham Decl."), ECF 57-2 ¶ 1. Durham alleges that he was not compensated
3  for all hours worked. FAC ¶ 33. In particular, Durham claims that Sachs failed to compensate him
4  for buggy time from the parking lot to the installation site and during meal periods. *See id.* ¶¶ 30-
5  33.

6  On July 25, 2018, Durham filed a wage and hours class action as an individual and on
7  behalf of all other persons similarly situated (collectively, "workers"). Compl, ECF 1. Durham
8  seeks to bring the following five class claims: (1) failure to pay wages for hours worked under
9  Cal. Labor Code § 1197; (2) wage statement and record-keeping violations under Cal. Labor Code
10 § 226; (3) failure to pay waiting time wages under Cal. Labor Code § 203; (4) violation of Cal.
11 Labor Code § 2802; and (5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus.
12 & Prof. Code §§ 17200, et seq. *See* FAC at 1, 7-15. Durham separately brings an individual claim
13 for the recovery of civil penalties under the California Private Attorney General Act ("PAGA"),
14 Cal. Labor Code § 2698, et seq. *Id.* at 1, 15. Durham filed a motion to certify two classes and two
15 subclasses on June 15, 2020. ECF 45.

16 On June 15, 2020, Sachs filed a motion for judgment on the pleadings. Two weeks later,
17 Sachs filed a partial motion for summary judgment. At the time of the hearing on the two motions,
18 Durham's motion for class certification was pending. ECF 45. Based on the parties' agreement,
19 the Court deferred issuance of a class certification order until it resolved the two instant motions.

20 **II.    LEGAL STANDARD**

21 **A. Motion for Judgment on the Pleadings**

22 Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but
23 early enough not to delay trial – a party may move for judgment on the pleadings." A Rule 12(c)
24 motion is "functionally identical" to a Rule 12(b)(6) motion, and the same legal standard applies
25 to both. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir.

2011). Thus, when considering a Rule 12(c) motion, a district court "must accept the facts as pled by the nonmovant." *Id*. at 1053. The district court then must apply the *Iqbal* standard to determine "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso*, 637 F.3d at 1054 & n.4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

A district court generally may not consider materials outside the pleadings in deciding a motion under either Rule 12(b)(6) or Rule 12(c), and if such materials are presented to the court and not excluded, the motion must be treated as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). A district court may, however, consider the following materials without converting a Rule 12(c) motion to a Rule 56 motion: "(1) exhibits to the nonmoving party's pleading, (2) documents that are referred to in the non-moving party's pleading, or (3) facts that are included in materials that can be judicially noticed." *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007).

### B. Motion for Summary Judgment

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The Court draws all reasonable inferences in favor of the party against whom summary judgment is sought. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to

3

1 limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary*, 699 F.Supp. 756, 759

2 (N.D.Cal.1987) (citing *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir.1981)).

3   The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F.Supp.2d 1001, 1004 (N.D.Cal.2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In order to meet its burden, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In judging evidence at the summary judgment stage, "the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F.Supp. 510, 513–14 (N.D. Cal. 1995). The court "determines whether the non-moving party's specific facts, coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party." *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F.Supp.2d 1244, 1250 (N.D. Cal. 2008).

  "It is reasonable to consider a Rule 56 motion [before a class certification motion] when early resolution of a motion for summary judgment seems likely to protect both the parties and the court from needless and costly further litigation." *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984). "Where the defendant assumes the risk that summary judgment in his favor will have only a stare decisis effect on the members of the putative class," the "proper approach" is for the "court to rule on the summary judgment motion first." *Id.*; *see also Kim v. Commandant*, 772 F.2d 521, 524 (9th Cir. 1985) (granting summary judgment before ruling on class certification motion, rejecting contention that "it was improper for the district court to decide the merits of the case

4

prior to a ruling on class certification"); *Curtin v. United Airlines*, 275 F.3d 88, 92 (D.C. Cir. 2001) (summary judgment properly granted before ruling on class certification motion because "the district court readily and correctly perceived fatal flaws in plaintiffs' claims"); *Marx v. Centran*, 747 F.2d 1536, 1552 (6th Cir. 1994) ("class action allegations in Marx's complaint presented no impediment to the district court's grant of summary judgment [because] [t]o require notice to be sent to all potential plaintiffs in a class action when the underlying claim is without merit is to promote inefficiency for its own sake").

## III.     DISCUSSION

### A. Motion for Judgment on the Pleadings

#### 1. Judicial Notice

Sachs requests that the Court take judicial notice of two collective bargaining agreements ("CBAs") that covered the Project, the IBEW Local 234 collective bargaining agreement ("IBEW Master Agreement") and the Project Labor Agreement specific to the Project ("Cal Flats PLA"), a union wage rate sheet, and the Senate committee report on Assembly Bill 569, which amended Cal. Labor Code § 512(e). *See* Request for Judicial Notice, ECF 48. Durham does not object to this request. *See* MJOP Reply, ECF 51.

District courts may not consider material outside the pleadings when assessing the sufficiency of a complaint. Fed. R. Civ. P. Rule 12(c); *cf. Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)"). When "matters outside the pleading are presented to and not excluded by the court," the motion for judgment on the pleadings converts into a motion for summary judgment under Fed. R. Civ. P. Rule 56. Fed. R. Civ. P. 12(d). Then, both parties must have the opportunity "to present all the material that is pertinent to the motion." *Id*.

An exception to this rule is when the Court takes judicial notice of documents pursuant to Fed. R. Evid. Rule 201. *See Khoja*, 899 F.3d at 1002. Rule 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2); *see Khoja*, 899 F.3d at 1000 (finding the district court abused its discretion by judicially noticing a transcript whose contents were disputed by the parties).

The Court GRANTS Sachs' motion for judicial notice. Courts in this district have granted judicial notice of CBAs, and neither the validity nor the content of the CBA is at issue here. *See Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1142 (N.D. Cal. 2019) (granting judicial notice as to CBA for preemption issues on judgment on the pleadings); *Hernandez v. Sysco Corp.*, No. 16-CV-06723-JSC, 2017 WL 1540652, at *2 (N.D. Cal. Apr. 28, 2017) (same*); see also Lefevre v. Pacific Bell Directory*, No. 14-cv-03803-WHO, 2014 WL 5810530, at *2 (N.D. Cal. Nov. 7, 2014) (denying judicial notice where there was a dispute as to the CBA's validity). The Court may also "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (internal quotation marks omitted); *Hernandez*, 2017 WL 1540652, at *2.

**2. Durham's Meal Period Claims are Barred by a Qualifying CBA**

Sachs argues that Wage Order 16[1] preempts Durham from bringing a claim under Cal. Labor Code § 512 because the Project PLA Agreement and the IBEW Master Agreement qualify

---

[1] Wage Order 16 is one of many wage orders promulgated by the Industrial Welfare Commission ("IWC"), which is "the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California." *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 576 (1996) (citing Cal. Lab. Code §§ 1173, 1178.5, 1182). Wage Order 16 applies to all persons employed in the on-site occupations of construction, drilling, logging, and mining,

6

1    under Wage Order 16 as CBAs that expressly provide for (1) the wages, hours of work, and
2    working conditions of employees, (2) premium pay for overtime hours worked, and (3) a regular
3    hourly rate of pay of at least 30 percent more than the state minimum wage. MJOP at 6. It also
4    argues that Cal. Labor Code § 512 codifies this CBA exemption. *Id*. at 7. Durham does not contest
5    the existence of the CBAs nor the statutory exemptions in Wage Order 16 and § 512. MJOP Opp'n
6    at 5-8, ECF 51. Instead, Durham argues that he is claiming wages owed for not being relieved of
7    all duty under Cal. Lab. Code §§ 1194 & 1197, as opposed to claiming an additional hour of
8    premium pay for foregone meal periods under § 512. Durham further bases his argument on the
9    California appellate court's opinion in *Gutierrez v. Brand Energy Servs. of California, Inc*., 50 Cal.
10   App. 5th 786, 794–95 (2020), *as modified on denial of reh'g* (July 2, 2020), *review denied* (Sept. 9,
11   2020), MJOP Opp'n at 2-5, which is discussed in detail below.

12       A deeper exploration of the statuary scheme underlying this suit is instructive. In
13   California, "wage and hour claims are ... governed by two complementary and occasionally
14   overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature,
15   and a series of 18 wage orders." *Brinker Restaurant Corp. v. Superior Court* 53 Cal.4th 1004,
16   1026 (2012).

17       In the FAC, Durham brings a claim for "failure to pay wages for hours worked," citing
18   Cal. Labor Code §§ 1194 & 1197. FAC §§ 21-37. This claim is based, among other things, on the
19   fact that "[w]orkers were *never paid for the time that they were on meal breaks* or when their meal
20   breaks or rest breaks were interrupted by work-related duties." FAC § 32 (emphasis added).

21       Cal. Labor Code § 1194 provides that "[n]otwithstanding any agreement to work for a
22   lesser wage, any employee receiving less than the legal minimum wage or the legal overtime
23   compensation applicable to the employee is entitled to recover in a civil action the unpaid balance

---

subject to exceptions not relevant here. *See generally* Wage Order 16, Cal. Code Regs. tit. 8, § 11160.

of *the full amount of this minimum wage or overtime compensation*." (emphasis added). Under Cal. Labor Code § 1197, "[t]he minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."

Meanwhile, Cal. Labor Code § 512(a) provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Employers running afoul of this provision are entitled to an hour of additional premium pay under Cal. Labor Code § 226.7 along with any unpaid wages for the time they were not relieved of duty during the meal period. Cal. Labor Code § 512(a) does not apply to an "employee employed in a construction occupation" who is "covered by a valid collective bargaining agreement [that] expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate." *Id*. § 512(e), (f).

Wage Order 16 § 4, titled "Minimum Wages," states that:

> (A) Every employer shall pay to each employee wages not less than . . . six dollars and seventy-five cents ($6.75) per hour for all hours worked, effective January 1, 2002.
>
> (B) Every employer shall pay each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

Wage Order 16 § 10, titled "Meal Periods," provides that "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than thirty (30) minutes." § 10(A). "Unless the employee is relieved of all duty during a thirty (30) minute

meal period, the meal period shall be considered an "on duty" meal period and counted as time worked." *Id*. § 10(D). Wage Order 16 § 10(E) explains that

> Paragraphs A, B, and D of Section 10, Meal Periods, shall not apply to any employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than thirty (30) percent more than the state minimum wage.

Under Wage Order 16 § 5, which details Reporting Time Pay guidelines, "[a]ll employer-mandated travel that occurs after the first location where the employee's presence is required by the employer shall be compensated at the employee's regular rate of pay or, if applicable, the premium rate that may be required by the provisions of Labor Code § 510 and Section 3, Hours and Days of Work, above." § 5(A). "This section shall apply to any employees covered by a valid collective bargaining agreement unless the collective bargaining agreement expressly provides otherwise." *Id*. at § 5(D).

The dispute before the Court boils down to whether Durham's unpaid wages claim is preempted by either Cal. Labor Code § 512 or Wage Order 16 § 10(E). Sachs argues that Durham's unpaid wage claim under § 1194 & 1197 is derivative of an unpled, underlying § 512 meal period claim. MJOP at 15-17. Durham, Sachs contends, cannot plead around the fact that the operative violation here is the failure to provide a duty-free meal period under § 512. MJOP Reply at 1, ECF 56. Durham does not contest the existence of a qualifying CBA, but rather emphasizes that neither Cal. Labor Code § 512 nor Wage Order 16 § 10 is the basis for his hours worked meal period claim. MJOP Opp'n at 5-8, ECF 51. Instead, Durham points to Wage Order 16 § 2, which defines "hours worked," and argues that nothing overrides his right to be paid for all "hours worked." MJOP Opp'n at 5.

Upon careful review of the parties' arguments, the Court concludes that the express statutory exemption for CBA-covered employees who bargain for the terms of their meal periods

9

1  extends to a derivative claim like this one. This conclusion is amply supported by state and federal
2  caselaw, most notably by *Gutierrez.*

3  In *Gutierrez*, the state appellate court considered "whether California law permits an
4  employer and its union-represented employees to execute a CBA that expressly waives the right to
5  be paid minimum wage for otherwise compensable pre-shift employer-mandated travel time." 50
6  Cal. App. 5th at 794–95 (2020). Interpreting the language of Wage Oder 16 § 5(D), the court held
7  that an employer owes an employee minimum wages *even where a qualifying CBA exempts*
8  *certain travel time* because Wage Order 16 § 5(D) did not contain an express exemption from the
9  minimum wage requirements of Cal. Labor Code § 1194. *Id*. at 798-802. It explained that the
10 language of Section 5 "[did] not mention, much less override, the separate requirement under
11 section 4(B) that employees receive compensation 'not less than the applicable minimum wage for
12 all hours worked ....'" *Id*. at 798. In other words, the court in *Gutierrez* relied on the language of
13 the Wage Order to conclude that § 5(D) does not permit an employee to enter into a CBA that
14 waives their right to minimum wage.

15 Durham believes *Gutierrez* stands for the proposition that employees cannot waive their
16 right to minimum wage under § 1194 for meal periods during which they are under an employer's
17 control. MJOP Opp'n at 2-5; Tr. at 20:1-11. This Court disagrees. First, the Court notes that the
18 reasoning in *Gutierrez* relied on the language of Wage Order 16 § 5, which is far narrower than the
19 language in § 10. And second, the court in *Gutierrez* expressly distinguished situations in which
20 there is an applicable statutory exemption. In doing so, it looked to its sister court's decision in
21 *Araquistain v. Pacific Gas & Electric Co.*, 229 Cal.App.4th 227 (2014). In *Araquistain*, the court
22 concluded that because of the statutory exemption within Cal. Labor Code § 512(e), union-
23 represented workers may bargain away their right to a meal period. *Araquistain*, 229 Cal.App.4th
24 at 238. The court in *Gutierrez* endorsed that outcome, explaining that Cal. Labor Code § 512(e)(2)
25 "provides 'an exception to the ordinary rule that an employer must provide meal periods of a

specified time after a specified amount of work; that is, it provides that where a collective bargaining agreement meets certain requirements, subdivision (a) 'do[es] not apply.'" *Gutierrez*, 50 Cal.App.5th at 801 (quoting *Araquistain*, 229 Cal.App.4th at 236). Unlike in *Araquistain*, where the court relied on "an express statutory exemption for CBA-covered employees *relating to the particular right at issue*," "there [was] no equivalent statutory language" at issue in *Gutierrez*. *Id*. (emphasis added). The reasoning in *Gutierrez* counsels that this Court should similarly distinguish Durham's claims where, as in *Araquistain*, there is an express statutory exemption for the particular right at issue.

Federal caselaw similarly counsels that Durham cannot evade the CBA meal period exemption through artful pleading. In *Pyara v. Sysco Corp.*, plaintiff Chris Pyara brought causes of action for "wage theft / time shaving" under Cal. Labor Code § 1194 based on Defendants Sysco Corporation and Sysco Sacramento, Inc.'s "practice of clocking out Pyara for meal and rest periods even when he remained working" and for failure to provide meal periods under Cal. Labor Code § 512 "based on Defendants' alleged policy of requiring Pyara to work through meal periods and to work at least five hours without a meal period and failing to provide a second meal period when Pyara worked shifts of ten hours or more." No. 2:15-CV-01208-JAM-KJN, 2016 WL 3916339, at *1, *3, *5 (E.D. Cal. July 20, 2016). Defendants moved for a judgment on the pleadings, arguing that Pyara's claims were statutorily barred or preempted. *Id*. at *2.

The Court first concluded that the Pyara's meal period claim under § 512 was statutorily exempted by § 512(e) because his employment was covered by a qualifying CBA. *Id*. *3-*4. When considering the § 1194 claim, the Court rejected Pyara's argument that "Defendants engaged in time shaving by not paying him for rest break periods, meal break periods, overtime periods, and even regular time he worked" because Pyara's "right to overtime and meal periods are respectively exempted by CLC sections 514 and 512(e)." *Id*. at *6. Those statutory exemptions did not, however, bar Pyara's "allegations that Defendants failed to provide him with rest periods

11

and shaved time off of his *regular time worked*." *Id*. (emphasis added). Accordingly, the Court granted Defendants' motion for judgment on the pleadings for Pyara's § 1194 first cause of action "to the extent [that it] rest[ed] upon violations of overtime or meal periods . . . because those claims are statutorily barred." *Id*.; *see also Chavez v. Smurfit Kappa N. Am. LLC*, No. 2:18-CV-05106-SVW-SK, 2018 WL 8642837, at *3-4 (C.D. Cal. Oct. 17, 2018) (holding that because plaintiff's unpaid overtime claim was barred by Cal. Labor Code § 514—which provides a CBA exemption parallel to that of § 512(e)—the corresponding unpaid minimum wage claim "necessarily fails"). Durham, like Pyara, is barred from bringing a § 1194 claim due to the CBA exemption enshrined in § 512(e).

The Court GRANTS Sachs' motion for judgment on the pleadings. The Court need not reach Sachs' argument about preemption under the Labor Management Relations Act § 301, 29 U.S.C. § 185 as it is moot. MJOP at 18-21; *see Pyara*, 2016 WL 3916339, at *4 (explaining that because plaintiff's claim is "statutorily barred by Section 512(e) . . . the Court need not determine whether it is also preempted by the LMRA."). Accordingly, the Court DISMISSES Durham's claims to the extent they are predicated on meal period violations.

**B. Motion for Summary Judgment**

Sachs requests partial summary judgment before the Court issues its class certification order. MSJ at 3-4. The parties agree that the timing of this order is appropriate given the circumstances, and the Court does not conclude otherwise. *See* Tr. at 23:4-25, ECF 70. Sachs moves the Court to determine that (1) Durham's inability to leave the Project or return to the parking lot during meal periods is irrelevant to the issue of control; and (2) Durham's buggy time claim is barred by a CBA. MSJ at 4-11.

> **1. Durham's Inability to Leave the Project and Lack of Transportation is Irrelevant to the Meal Period Claims**

Sachs' first challenge does not function as an overarching attack against Durham's meal period claim, but rather asks the Court to consider whether two specific factual circumstances are relevant to whether Sachs controlled Durham during meal periods. *See* MSJ Reply at 6, ECF 58 ("Plaintiff's claim for hours worked during a meal period is not subject to summary judgment"). Although the Court has already concluded Durham's meal period claims are barred by the CBAs, the Court nonetheless GRANTS Sachs' motion for partial summary judgment with respect to these two narrow issues.

Durham brings his meal period claim pursuant to Cal. Labor Code § 1194. FAC ¶¶ 31-33. As explained above, Cal. Labor Code § 1194 provides employees with a private right of action to recover minimum wages (or the legal overtime compensation) for hours worked. Under Wage Order 16, the time that an employee is "subject to the control of an employer" is considered as "hours worked." Wage Order 16 § 2(J). Employees subject to an employer's control must be compensated under the IWC's wage orders even if they not required to be working during that time. *See Griffin v. Sachs Electric Co.*, 390 F. Supp. 3d 1070 (N.D. Cal. 2019) (interpreting Wage Order 16).

In *Bono Enterprises, Inc. v. Bradshaw*, the California Court of Appeal defined "control" to be "[w]hen an employer directs, commands, or restrains an employee from leaving the work place during his or her lunch hour and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control." 32 Cal. App. 4th 968, 975 (1995). The *Bono* court also found employees in the manufacturing industry who were required to remain on the work premises during their lunch hour had to be compensated for that time under the definition of "hours worked" under Wage Order 1. *Id.* Determining whether an employee is on duty during meal periods requires that the Court analyze the absence of duty and freedom from employer control. *See id.* at 975; *see also Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 587–88 (2000) (the "level of the employer's control over its employees, rather than

1  the mere fact that the employer requires the employees' activity, is determinative of whether time
2  is on duty.").

3  The Court easily resolves Sachs' first argument. Sachs contends that "[b]ecause driving off
4  the Project in this case requires approximately 45 minutes, it was impossible for any employee to
5  leave his or her work station, leave the Project, and return in 30 minutes. Therefore, in this case,
6  any claim based on Plaintiff's inability to drive off of the Project to enjoy a lunch break is
7  baseless." MSJ at 4. To support this argument, Sachs points to the California Supreme Court's
8  decision in *Augustus v. ABM Security Services, Inc*., where it held that a break begins at an
9  employee's workstation. 2 Cal. 5th 257, 265 (2019). The Court in *Augustus* went on to explain
10 that "practical limitations on an employee's movement" during a break that mean that employees
11 "have to remain on site…is not sufficient to establish employer control." *Id*. at 270.

12 Durham responds that this claim is not predicated on his inability to leave the Project, "but
13 on being confined to the daily work site during his meal period and also being prevented from
14 going to the parking lot during such meal periods." MSJ Opp'n at 6, ECF 57; MSJ Reply at 1
15 ("Plaintiff concedes that his inability to leave the Project is not relevant to his '*Bono* hours worked
16 claim.'"). Because this issue is uncontested, the Court finds that whether Sachs prevented
17 employees from leaving the Project is irrelevant to Durham's meal period claims.

18 Sachs' second argument presents a similarly narrow and straightforward question for the
19 Court. Sachs contends that whether Durham could return to the parking lot during meal periods is
20 irrelevant to whether Sachs controlled Durham during meal periods. MSJ at 6-10. In its reply
21 brief, however, Sachs narrows this question to encompass only the relevance of whether Sachs
22 provided Durham with a buggy during meal periods. MSJ Reply at 3-7.

23 Whether Sachs provided Durham with a buggy is irrelevant to whether it controlled him
24 during meal periods. Sachs is not required to provide meal period transportation or to delay the
25 start time of a meal period until an employee reached his desired lunch spot. *See Bernstein v.*

14

*Virgin Am., Inc.*, 227 F. Supp. 3d 1049, 1072 (N.D. Cal. 2017) (explaining that an airline could provide flights attendants with duty-free meal breaks in flight). The Court notes that the parties dispute only the implication of this issue—Sachs contends that employees could not reach the parking lot without the assistance of buggies while Durham argues that some employees may have been able to do so depending on where their work site was located. *Compare* Tr. at 10:9-15 *with id*. at 11:9-15. Because there are material disputes of fact about the implication of Durham's access to a buggy, the Court confines its holding only to buggy access.

For the reasons discussed above, the Court GRANTS summary judgment of the following facts: it is not relevant to whether Durham was subject to Sachs' control during a meal period (1) whether Durham was able to leave the Project and (2) whether Sachs allowed Durham to ride in a buggy to return to the parking lot. The Court does not opine as to whether Sachs otherwise controlled its employees during the meal period. The Court agrees with Durham that "the degree of control exercised by Sachs is at a minimum . . . a triable issue of fact." Opp'n at 6; *see also* Tr. at 5:10-13.

### 2. Durham's Buggy Time Claim is Not Barred by a Qualifying CBA

The remaining issue before the Court is whether Durham's minimum wages claim for buggy time between the parking lot and the work site is barred by a CBA. MSJ at 10-17; MSJ Opp'n at 9-15. The Court discussed the key authority on this issue at length in the context of Durham's meal period claims when analyzing Sachs' Motion for Judgment on the Pleadings. While Durham urges the Court to follow *Gutierrez* here, MSJ Opp'n at 10-12, Sachs counsels that the Court should instead adopt the reasoning in *Burnside v. Kiewit Pac. Corp.*, 491 F. 3d 1053, 1071 (9th Cir. 2007), which suggested that an employee can waive his state law rights. MSJ at 12 (citing *Brewster v. County of Shasta*, 112 F. Supp. 2d 1185, 1188 n.5 (E.D. Cal. 2000) (where Ninth Circuit decisions interpreting California law conflict with decisions by state courts other than the highest state court (such as intermediate and appellate state courts) "the Ninth Circuit

15

1    obligates adherence by [the district] court to the Circuit's decision and rejection of the non-binding

2    California precedent"). As discussed below, the Court finds no conflict between 9th Circuit and

3    California authority.

4    Durham's claim for minimum wages between the parking lot and his work site is not

5    barred by a CBA. Sachs cannot escape the reasoning of *Gutierrez*, which made clear that "Wage

6    Order 16 § 5(D) contains no express exemption from the minimum wage requirements in Labor

7    Code §1194, subdivision (a) and Wage Order 16 § 4 for the employer-mandated travel time of

8    CBA-covered employees." 50 Cal. App. 5th at 801. Just like the travel time at issue in *Gutierrez*,

9    buggy time is governed by Wager Order 16 § 5(A), which requires employers to compensate

10   employees for "[a]ll employer-mandated travel that occurs after the first location where the

11   employee's presence is required by the employer." Notably, Sachs concedes the applicability of

12   *Gutierrez* to this claim. *See* Tr. at 7:16-20 ("[Sachs:] [I]t obviously is directly on point. We did our

13   best to try to distinguish it or try to say why it shouldn't be followed, but we're inclined to submit

14   on that, Your Honor, and we are okay with you applying *Gutierrez* to the travel time only portion

15   of the claim.").

16   *Burnside* does not save Sachs from this conclusion. *See also* Tr. at 5:17-6:24 (discussing

17   the applicability of *Gutierrez* and *Burnside*). In *Burnside*, the Ninth Circuit held that an

18   "employees' right to be compensated for time spent in compulsory round-trip travel existed as a

19   matter of state law and was independent of any provision found in [the] CBA." 491 F.3d at 1054.

20   Moreover, a "unionized employee cannot be deprived of the full protections afforded by state law

21   simply by virtue of the fact that her union has entered in a CBA." *Id.* at 1070. The court ultimately

22   concluded that the plaintiff's CBA was silent on compensation for travel time and found no waiver

23   of the plaintiff's right to compulsory round-trip travel time. Although Sachs argues *Burnside*

24   suggests employees can waive their state-conferred rights, *see id.* (a "state-law-conferred right . . .

25   remains with the employee unless and until it is expressly given away"), the court in *Burnside* did

not squarely confront the question of "whether a CBA may exempt any employer from paying any compensation (including minimum wage) for travel time." *Gutierrez*, 50 Cal. App. 5th at 801 fn. 5 (distinguishing *Burnside*). Nor was this suggestion made with the benefit of the state court's further explanation of the California employment law landscape as discussed in *Gutierrez*. Accordingly, the Court DENIES Sachs' motion for partial summary judgment with respect to Durham's buggy time claim.

## IV. ORDER

The Court rules as follows:

1. The Court GRANTS Sachs' motion for judgment on the pleadings.
2. The Court DISMISSES Durham's claims to the extent they are derived from meal period violations.
3. The Court GRANTS Sachs' motion for partial summary judgment of the following facts: it is not relevant to whether Durham was subject to Sachs' control during a meal period
   a. whether Durham was able to leave the Project and;
   b. whether Sachs allowed Durham to ride in a buggy to return to the parking lot.
4. The Court DENIES Sachs' motion for partial summary judgment that Durham's buggy time claim is barred by a CBA.

Dated: December 23, 2020

_____
BETH LABSON FREEMAN
United States District Judge

17