United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| WILLIAM DURHAM, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>SACHS ELECTRIC COMPANY, et al.,<br><br>        Defendants. | Case No. 18-cv-04506-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO CERTIFY CLASS**<br><br>[Re: ECF 45] |

**I.      BACKGROUND**

This wage and hour class and PAGA action arises out of Plaintiff William Durham and the proposed class members' employment by Defendant Sachs Electric Company ("Sachs") at the California Flats Solar Project. Presently before the Court is Plaintiff's Motion for Class Certification. Mot., ECF 45. Durham seeks to certify four California classes (two classes and two subclasses) under Rule 23(b)(2). For each class, Durham seeks to bring the following five claims: (1) failure to pay wages for hours worked under Cal. Labor Code § 1197; (2) wage statement and record-keeping violations under Cal. Labor Code § 226; (3) failure to pay waiting time wages under Cal. Labor Code § 203; (4) violation of Cal. Labor Code § 2802; and (5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. Durham separately brings a representative claim for the recovery of civil penalties under the California Private Attorney General Act ("PAGA"), Cal. Labor Code § 2698, *et seq*. *See* First Am. Compl. ("FAC"), ECF 13 at 1, 7-15.

The Court held a hearing on this motion on October 1, 2020. Based on the stipulation of

the parties, the Court deferred ruling on this motion until it resolved the pending motions for judgment on the pleadings and partial summary judgment. *See* ECF 47, 53. The Court has now resolved those motions. ECF 73. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for class certification.

### A.   California Solar Flats Project

Durham alleges that Sachs acted as an employer, co-employer, or joint-employer of Durham and the proposed class members during their work on the California Flats Solar Project, which involved the construction and development of photovoltaic power. FAC ¶¶ 8-9. Relevant here, Durham alleges that Sachs violated California labor laws when the company controlled employee conduct in two ways.[1] First, Durham alleges Sachs required the putative class members to ride company buggies to job sites before the start of the work day. FAC ¶ 28. Sachs did not record this time as hours worked. *Id*. Second, Durham alleges Sachs required the putative class members to stay at their job sites during the entire workday, to include during meal periods. FAC ¶ 31. Sachs "did not make the buggies available to Plaintiff or class members to take them to the parking lot during their meal periods." *Id*.

### B.   Named Plaintiff

Durham was employed at the California Flats Solar Project by Sachs as a journeyman wireman, crew foreman, and general foreman between July 2016 and September 2017. Durham Decl., ECF 45-3 ¶ 2. Durham states that California Flats Solar Project management, which includes Sachs, told workers that if they did not follow the Project rules, they would be

---

[1] Durham also alleges a Drive Time claim arising out of the 45-minute drive from the job site security gate to the parking lot. FAC ¶¶ 27-29. At the time of the motion hearing, the Drive Time claims were stayed pending the Ninth Circuit's ruling on appeal in *Griffin v. First Solar, Inc., et al.*, Case No. 5:17-cv-03778-BLF. *See* Mot. at 5. On December 14, 2020, the Ninth Circuit affirmed the court's order granting summary judgment in *Griffin*. *Griffin v. Sachs Elec. Co.*, 831 F. App'x 270 (9th Cir. 2020). On January 22, 2021, this Court lifted its stay in the above-captioned case on the Drive Time claim. ECF 79.

United States District Court
Northern District of California

disciplined, suspended, or fired. *Id*. ¶ 6.

Durham alleges that Sachs required California Flats Solar Project employees to use buggies to travel between the parking lot and their work sites each day. Durham Decl. ¶¶ 8-10, 14-15. Employees were not paid during buggy drive time. *Id*. ¶ 12. Specifically, Sachs foreman Chris Clark instructed Durham that he was to wait where the buggies were parked until his entire crew was assembled, and to then get into the buggies, which would then take the crew to its daily installation work site. *Id*. ¶ 9. Clark told Durham that the workday started at each crew's installation site. *Id*. ¶ 10. The time it took the employees to ride in the buggies from the parking lot to the installation site varied from less than ten minutes to more than fifteen minutes. *Id*. ¶ 10. As such, Durham was instructed by his foreman to meet at the buggies between ten to fifteen minutes before the scheduled daily start time. *Id*. The crews allegedly never arrived at the installation site after the scheduled start time. *Id*. Durham further alleges that he was not paid while waiting for his crew to gather or during buggy rides to the installation sites. *Id*. ¶ 12. When Durham became a foreman, he enforced these buggy rules. *Id*. ¶ 10. Sachs management instructed Durham to "only reflect the scheduled work hours on the timesheets for [his] crew members and not to include the time waiting for and traveling on the buggies between the parking lot and the Installation Site." *Id*. ¶ 11. Durham complied with this directive. *Id*.

With respect to meal breaks, Durham states that he was "told by Sachs management that we workers were required to stay on the job site during the entire workday from the beginning of the workday to the end of the workday." Durham Decl. ¶ 17. Similarly, he states that he was told by Sachs management that he was required to eat lunch at his daily installation site and that the buggies could not be used to go back to the parking lot during lunch. *Id*. ¶¶ 18-19. When Durham became a general foreman, Sachs Superintendent Curt Brennan told Durham to ensure that these lunch rules were enforced, and Durham did so accordingly. *Id*. ¶¶ 17-19.

1

2

3

**C.     Proposed Class Definitions**

Durham seeks to certify four total classes under 23(a) and 23(b)(3). The class definitions

are as follows:

4

5

6

7

8

9

**i.     Sachs Unpaid Wages Class (Buggy Time Claim):**

All non-exempt employees of Sachs Electric Company who worked on the construction of the California Flats Solar Project at any time within the period from July 25, 2014 through the date of class certification who were not paid for all time spent after arriving at the parking lots and waiting for and traveling to their daily work sites and the time spent waiting for and traveling from their daily work sites to the parking lots.

10

11

12

13

**ii.     Sachs Unpaid Wages Class (Meal Period Time Claim):**

All non-exempt employees of Sachs Electric Company who worked on the construction of the California Flats Solar Project at any time within the period from July 25, 2014 through the date of class certification who were not paid for all the time of their meal periods.

14

15

16

**iii.     Termination Pay Subclass:**

All members of Class 1 and 2 whose employment with Sachs Electric Company terminated within the period beginning July 25, 2015 to the date of class certification.

17

18

19

**iv.     Wage Statement Subclass:**

All member of Class 1 and 2 who received wage statements from Sachs Electric Company during the period beginning July 25, 2017 to the date of class certification.

20

21

Mot. at 9.

22

**D.     Submitted Evidence**

23

24

25

26

27

28

Durham provides nineteen declarations from employees (and thus potential class members). The declarations generally state that the employees were required by Sachs management to meet with their crews 10-15 minutes before the scheduled start time at the parking lot near the buggies before driving to their work site for the day. *See, e.g.*, Durham Decl. ¶¶ 8-12; ECF 45-5 ¶¶ 7-10; ECF 45-6 ¶¶ 7-10; ECF 45-7 ¶¶ 7-10; ECF 45-8 ¶¶ 7-10. Depending on the

4

United States District Court
Northern District of California

location of the work site, crews arrived back to the parking lot after stop time, meaning that they were not paid for all of the time that they travelled in the buggies. *See, e.g.*, Durham Decl. ¶¶ 8-12; ECF 45-5 ¶¶ 11-15 ("The workers on my crew and I routinely arrived at the parking lots at our daily scheduled stop times due to the proximity of our installation site, others were not as lucky"); ECF 45-7 ¶¶ 12-20 ("The workers on my crew and I routinely arrived at the parking lots after our daily scheduled stop times."); ECF 45-10 ¶¶ 11-13 ("The workers on my crew and I routinely arrived at the parking lots after our daily scheduled stop times. I was one of the workers who was fired because my crew arrived too early at the parking lot at the end of the workday".). Employees also stated that they were required by Sachs management to stay at their job sites for the entire workday, to include during the employees' meal period. *See, e.g.*, Durham Decl. ¶¶ 17-20; ECF 45-5 ¶¶ 20-23; ECF 45-6 ¶¶ 14-17; ECF 45-7 ¶¶ 25-28; ECF 45-8 ¶¶ 14-17. Additionally, Durham proffered a Sachs company policy titled "Standard Job Work Rules, California Flats Solar Facility" and dated January 5, 2016. 2016 Policy, ECF 45-1 at 8. The relevant sections of the policy state

> WORK AREA: Employees shall stay in their assigned work areas, going about the installation of the work as directed by their supervisor. Employees who leave their assigned work areas, or who leave the workplace or jobsite without a supervisor's authorization for reasons not pertaining to work-related activities, may be subject to disciplinary action, up to and including termination.

> WORKING HOURS: The standard work day begins at 7:00am and ends at 5:30pm. Employees shall be at their assigned work place and ready to work at their designated starting time, and shall remain at work until their regular quitting time. If you are late or need to leave early, you must sign in/out at the jobsite office.

ECF 45-1 at 8.

Sachs, for its part, submits 44 additional employee declarations along with a company policy dated January 31, 2017. ECF 52-4-47 (declarations); 2017 Policy, ECF 52-2 at 9-10. The declarations almost uniformly state that the employees gathered at the parking lot near the buggies

at start time and were compensated for buggy drive time to their work sites. *See, e.g.,* ECF 52-4 ¶ 4; ECF 52-5 ¶¶ 4-5; ECF 52-6 ¶ 4; ECF 52-7 ¶ 4. Many of the employees also state that they left their work sites at the end of each day with enough time to reach the parking lots by end time. *See, e.g.,* ECF 52-5 ¶ 6; ECF 52-7 ¶¶ 3-4; ECF 52-9 ¶ 5. Some of the declarations explain that the employees could spend their meal period "however they wanted" at or near the work site. A minority of the declarations state that employees were able to return to the parking lot during meal periods, although they do not explain if such trips were condoned by Sachs management. *See, e.g.,* ECF 52-20 ("We could walk around, use cell phones, or take naps during our lunch break. If some crew members chose to leave the Primary Work Area in a buggy to go to the parking lot or to visit other crews, they just needed to be back to the Primary Work Area before lunch ended. The use of buggies during lunch was quite common.").

The relevant sections of Sachs' 2017 policy state

> WORK AREA: Employees shall stay in their assigned work areas, going about the installation of the work as directed by their supervisor. Employees who leave their assigned work areas, or who leave the workplace or jobsite without a supervisor's authorization for reasons not pertaining to work-related activities, may be subject to disciplinary action, up to and including termination.

> WORKING HOURS: The standard work day begins at 8:00am and ends at 4:30pm. Employees shall be at their buggie at 8:00 am, morning break is 10 min at 10:00 am, lunch is 30 min. at 12:00pm, afternoon break is 10min. at 2:00pm, and clean up is at 4:10pm. NO vehicles leave the parking lots until 4:30pm. If you are caught leaving early you are at risk for a write up or termination. If you are late or need to leave early, you must sign in/out at the jobsite office.

ECF 52-2 at 9.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class actions. "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588

United States District Court
Northern District of California

(9th Cir. 2012) (internal quotation marks omitted). The burden is on the party seeking certification to show, by a preponderance of the evidence, that the prerequisites have been met. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011).

Certification under Rule 23 is a two-step process. The party seeking certification must first satisfy the four threshold requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy. Specifically, Rule 23(a) requires a showing that

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

The party seeking certification must then establish that one of the three grounds for certification applies under Rule 23(b). Durham invokes Rule 23(b)(3), which provides that a class action may be maintained where

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

A Rule 23(b)(3) class is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

7

United States District Court
Northern District of California

1022 (9th Cir. 1998) (internal quotation marks omitted). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (citation and internal quotation marks omitted); *accord Mazza*, 666 F.3d at 589.

In considering a motion for class certification, the substantive allegations of the complaint are accepted as true, but "the court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through a class action." *Hanni v. Am. Airlines, Inc.*, No. 08-cv-00732, 2010 WL 289297, at *8 (N.D. Cal. Jan. 15, 2010); *see also Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 447 (N.D. Cal. 2012) ("[Courts] need not blindly rely on conclusory allegations which parrot Rule 23 requirements." (citation and internal quotation marks omitted)). Accordingly, "the court may consider supplemental evidentiary submissions of the parties." *Hanni*, 2010 WL 289297, at *8 (citations omitted); *see also Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

"A court's class-certification analysis . . . may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (citation and internal quotation marks omitted). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

## III.    DISCUSSION

The parties have submitted extensive declaration evidence in support of their respective positions. The Court has reviewed all of this evidence in detail. For the reasons discussed below, the Court is persuaded that it is appropriate to certify the Unpaid Wages Class (Buggy Time Claim) and relevant Subclasses under Rule 23(b)(3) for each of the five causes of action.

United States District Court
Northern District of California

### A.    Certification of Unpaid Wages Class (Meal Period Time Claim)

When the Court ruled on Sachs' motion for judgment on the pleadings, it dismissed Durham's claims "to the extent that they [were] predicated on meal period violations" based on the application of Wage Order 16 and the Collective Bargaining Agreements covering these employees. ECF 73 at 12. The Court necessarily DENIES AS MOOT Durham's motion to certify the Unpaid Wages Class (Meal Period Time Claim) and the relevant Subclasses. The Court focuses its analysis below on certification of the Unpaid Wage Class (Buggy Time Claim) and the relevant Subclasses.

### B.    Plaintiff Has Met the Rule 23(a) Requirements

A named plaintiff bears the burden of demonstrating that the class meets the following four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended by*, 273 F.3d 1266 (9th Cir. 2001) (citing *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977)).

#### i.    Numerosity

Rule 23(a)(1) requires that the size of the proposed class be "so numerous that joinder of all the class members is impracticable." Impracticability is not impossibility, and instead refers only to the "difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (citation and internal quotation marks omitted). While there is no set number cut-off, the number of individuals who will satisfy the requirements for membership in the proposed classes in this case easily satisfies the numerosity requirement. *See Litty v. Merrill Lynch & Co.*, No. cv 14-0425 PA, 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015) ("[N]umerosity is presumed where the plaintiff class

contains forty or more members.”); *Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) (noting that courts have certified classes as small as 14 and have often certified classes with 50 to 60 members).

The Court concludes there is sufficient numerosity. Durham alleges that there are over 768 class members who worked as employees of Sachs at the California Flats Solar Project during the class period. Mot. at 10. Joinder of each of these affected individuals would be impracticable. Sachs does not dispute that this requirement is satisfied.

### ii.    Commonality

The commonality requirement of Rule 23(a)(2) is met where “the class members’ claims ‘depend upon a common contention’ such that ‘determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] with one stroke.’” *Mazza*, 666 F.3d at 588 (internal citation omitted) (quoting *Dukes*, 564 U.S. at 350). Thus, a plaintiff seeking to certify a class must “demonstrate ‘the capacity of classwide proceedings to generate common answers’ to common questions of law or fact that are ‘apt to drive the resolution of the litigation.’” *Id.* (quoting *Dukes*, 564 U.S. at 350). “[C]ommonality only requires a single significant question of law or fact.” *Id.* at 589 (citing *Dukes*, 564 U.S. at 358). “The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3).” *Hanlon*, 150 F.3d at 1019. “The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.” *Id.*

The Court finds that Durham has satisfied the commonality requirement. Durham alleges that common issues to the class include:

- Whether Sachs had a policy that workers were required to engage in buggy rides before the start time from which they were paid.

- Whether the Buggy Time constituted “hours worked” under California law.

- Whether the Buggy Time was compensated.

Mot. at 11.

Durham's claims satisfy the low threshold of Rule 23(a)(2). Durham has identified common factual questions, such as whether Sachs' policies deprived the putative class members of wages for hours worked during buggy time and common legal questions, such as Sachs' obligations under California Labor Code §§ 201–03, 226, 1197, and 2802 and California's UCL. These commonalities are sufficient to satisfy Rule 23(a)(2). Sachs largely objects to the presence of commonality in the context of the Rule 23(b)(3) predominance inquiry. *See* Oppo., ECF 52 at 5-15. The Court will further discuss these common questions and Sachs' objections when it analyzes whether common questions predominate.

### iii.   Typicality

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citations omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotation marks and citation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation. *See Hanon v. Dataprods. Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

Durham has demonstrated that his claim is representative of the claims of the class. Durham alleges that because of Sachs' buggy time policies at the California Solar Site Project, he

11

was not paid fair wages under California law. So too for the putative class members. *See* Durham Decl. at ¶ 21 ("I was told by Sachs management that the rules discussed in this declaration applied to all workers at the Solar Site and I observed that they were followed . . . the workers in the proposed classes in this case were subject to the same working conditions, controls, policies, procedures and other rules of the Solar Site job site to which I was subjected to"). If the putative class members were to proceed in an action parallel to this action, they would advance legal and remedial theories similar, if not identical, to those advanced by Durham.

### iv.    Adequacy

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." "Determining whether the representative parties adequately represent a class involves two inquiries: (1) whether the named plaintiff and his or her counsel have any conflicts of interest with other class members and (2) whether the named plaintiff and his or her counsel will act vigorously on behalf of the class." *Calvert v. Red Robin Int'l, Inc.*, No. C 11–03026, 2012 WL 1668980, at *2 (N.D. Cal. May 11, 2012) (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). These inquiries are guided by the principle that "a class representative sues, not for himself alone, but as representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity." *Id.* (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949)).

Durham contends that there are no conflicts of interests within the proposed class. Mot. at 12. He also contends that he is prepared to take necessary steps to fairly and adequately represent the classes, to include assisting counsel in the litigation. *See id.*; *see also* Durham Decl. at ¶¶ 22-24. Finally, Durham argues that he has retained competent and experience counsel who have successfully prosecuted class actions in the past and have done extensive research regarding the

instant claims. *Id.*; *see* Dion-Kindem Decl., ECF 45, Exh. 1 at ¶¶ 3-8; Blanchard Decl., ECF 45, Exh. 2 at ¶¶ 2-6. Sachs' objection to the adequacy prong is based on class counsel's alleged conflicts of interest in another lawsuit, *Griffin v. First Solar, Inc., et al.*, Case No. 5:17-cv-03778-BLF, a wage and hour suit based on similar conduct at the California Flats Solar Project. Opp. at 2, 19-20. Sachs argues that during lead plaintiff Justin Griffin's deposition, Griffin "testified unequivocally, forcefully, and repeatedly that he met his crew at the parking lot at start time before leaving in the buggy for their primary work area" Opp. at 19. Griffin, Sachs contends, will be its "star witness" in the instant case and "class counsel will have a particular problem simultaneously arguing that, as a matter of practice, all class members were required to meet at their daily installation sites at start time after the buggy drop off, while accepting that Griffin and his crew continuously did the opposite." Opp. at 2, 19.

The Court disagrees. There is no conflict of interest in counsel representing the putative class members in this action as well as the potential class members in *Griffin*. Plaintiff's counsel is alleging similar, consistent theories based on similar conduct by a practically identical group of defendants. Griffin is but one putative member of this proposed class. That he made comments during a deposition that do not wholly support Durham's theory in this case does not render counsel inadequate here. What's more, Griffin's testimony does not directly speak to all of the legal theories forwarded by Durham here. For example, Sachs has not presented any evidence that Griffin was told about a Sachs buggy ride policy. *See* Griffin Decl., ECF 52-1. And, as Durham points out, even if Griffin's crew normally left on the buggies at the scheduled start time, that does not mean that employees were not required by Sachs policy to meet at the buggies before the scheduled start time. Reply, ECF 55 at 12. Accordingly, class counsel's representation of both classes does not raise any appearance of divided loyalties. The Court similarly concludes that Durham and his counsel will vigorously prosecute the action on behalf of the entire class. Any concerns to this end are further abated by the fact Durham's counsel may opt not to cross-examine

Griffin should he be called as a witness by Sachs. *See* Reply at 12. In sum, Plaintiff's counsel is perfectly adequate to represent Durham and the putative class.

### C.    Plaintiff Has Met the Rule 23(b)(3) Requirements

"[T]he presence of commonality alone [under 23(a)(2)] is not sufficient to fulfill Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1022. Rather, "[t]o qualify for certification under [Rule 23(b)(3)], a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id*. (quoting Fed. R. Civ. P. 23(b)(3)). In the instant case, Durham seeks to certify four Rule 23(b)(3) classes.

### 1.  Predominance

"'The Rule 23(b)(3) predominance inquiry' is meant to 'tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Dukes*, 564 U.S. at 376 (alteration in original) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The predominance test of Rule 23(b)(3) is "far more demanding" than the commonality test under Rule 23(a)(2). *Amchem*, 521 U.S. at 624. Though common issues need not be "dispositive of the litigation," *In re Lorazepam & Clorazepate Antitrust Litig*., 202 F.R.D. 12, 29 (D.D.C. 2001), they must "present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication" so as to justify "handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022. Courts must thus separate the issues subject to "generalized proof" from those subject to "individualized proof" to determine whether Durham has satisfied the predominance requirement. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig*., No. M 02-1486, 2006 WL 1530166, at *6 (N.D. Cal. June 5, 2006) ("Predominance requires that the common issues be both numerically and qualitatively substantial

14

in relation to the issues peculiar to individual class members." (internal quotation omitted)). Whether the predominance requirement is satisfied in a particular case "turns on close scrutiny of 'the relationship between the common and individual issues.'" *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (quoting *Hanlon*, 150 F.3d at 1022).

The predominance requirement is the biggest hurdle for Durham to meet in his motion for class certification of the Unpaid Wages Class (Buggy Time Claim). Sachs argues that the 2016 policy only covers part of the class period, that Durham's employee declarations are substantially outweighed by Sachs' employee declarations, and that the parties' declarations, considered in aggregate, prove that "any class-wide trial will be inundated by individual issues from class members." Opp. at 5-15. Durham responds that Sachs' argument improperly goes to the merits of his claims at the class certification stage. Reply at 1. He also contends that Sachs itself admits there was a common policy surrounding buggy time. Reply at 2-7. As such, he argues that there is a common, predominant question here: what was Sachs' policy regarding buggy time? *Id*. At the motion hearing, Durham emphasized his theory of the case turned on the existence of a uniform buggy time policy, thus dampening the impact of the Sachs declarations.

"Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." *See Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1033 (2012). This includes "policy-to-violate-the-policy" theories of liability, where a defendant's official policy is facially compliant with the relevant labor law, but the defendant implements unofficial policies undermining this compliance. *Campbell v. Vitran Express Inc.*, 2015 WL 7176110, at *4, *6 (C.D. Cal. 2015) (citing *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1166 (9th Cir.2014) ("Proving at trial whether such informal or unofficial policies existed will drive the resolution of [the overtime issue].")).

United States District Court
Northern District of California

15

Class certification is not always appropriate where a plaintiff alleges an unofficial policy to violate wage-and-hour laws, however. *Flores v. CVS Pharmacy, Inc.*, 2010 WL 3656807, at *5 (C.D. Cal. Sept. 7, 2010), *aff'd sub nom. Flores v. Supervalu, Inc.*, 509 F. App'x 593 (9th Cir. 2013) (rejecting unofficial policy theory that the demeanor of some supervisors implicitly compelled employees to forego breaks because the alleged common issues were "contingent on a number of human factors and individual idiosyncracies" and have "little to do with an overarching policy" that dictated how individuals were to take their breaks"); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir.2009) (holding that class certification may be denied when "a fact-intensive inquiry into each potential plaintiff's employment situation" is required) (internal quotation marks omitted). The distinguishing factor in this determination "appears to be the amount of evidence presented to support the existence of an unofficial policy. In other words, common issues predominate in those cases where the plaintiff proffers sufficient evidence to demonstrate that an unofficial policy exists and applies uniformly to all class members." *Campbell*, 2015 WL 7176110, at *7.

The Court concludes that, subject to modifications to the class's common questions, Durham has presented sufficient evidence to demonstrate an unofficial policy exists and applies uniformly to all class members. The narrowing of the class questions is based on Plaintiff's unequivocal approval at the motion hearing; indeed, at the hearing, Plaintiff affirmed that its legal theory depended on the existence of a uniform buggy time policy.[2] Durham has presented

---

[2] At the motion hearing, Plaintiff made the following representations to the Court:

> THE COURT: Let me ask you this. Are you suggesting that the jury will be asked did the plaintiff prove that Sachs had a uniform policy of requiring a buggy ride off the clock? Is that what you're going to be -- is that the question you'd pose.
> MR. DION-KINDEM: Yes.
> THE COURT: And so if the jury credits two or three of the defendants witnesses, then you lose. That's what you're suggesting.
> MR. DION-KINDEM: That's right.

declarations from nineteen class members who were members of a variety of Sachs crews and worked under a variety of Sachs managers. *See* Opp. at 9-10 (crews); Reply at 2-3 (managers). That the policy had disparate implications for different Sachs employees does not defeat a finding of predominance. *Bradley v. Networkers Internat., LLC*, 211 Cal.App.4th 1129, 1143 (2012) ("common issues predominated even if the policy did not affect each employee in the same way and damages would need to be proved individually"). The Court narrows the buggy time class questions as follows:

| Proposed class question | Modified class question |
|---|---|
| Whether Sachs had a policy that workers were required to engage in buggy rides before the start time from which they were paid. | Whether Sachs had a uniform policy that workers were required to engage in buggy rides before the start time from which they were paid. |
| Whether the Buggy Time constituted "hours worked" under California law. | Whether Buggy Time constituted "hours worked" under California law. |
| Whether the Buggy Time was compensated. | Whether Sachs uniformly compensated class members for Buggy Time. |

Narrowing the class questions in this manner serves to focus this suit on a theory of liability that this Court can resolve for all class members, namely whether Sachs had a uniform policy that failed to compensate the putative class members for hours worked during Buggy Time.

In support of this conclusion, the Court considers Sachs' official 2016 and 2017 policies.[3] The 2016 policy states that "[t]he standard work day begins at 7:00am and ends at 5:30pm. Employees shall be at their assigned work place and ready for work at their designated starting time, and shall remain at work until their regular quitting time." ECF 45-1 at 8. On its face, this

---

[3] Sachs relies on *Garcia v. Sun Pac. Farming Co-op*. to oppose Durham's motion to certify the buggy time class. 2008 WL 2073979 (E.D. Cal. May 14, 2008), *aff'd sub nom. Garcia v. Sun Pac. Farming Co-op, Inc*., 359 F. App'x 724 (9th Cir. 2009). *See* Opp. at 14. However, in *Garcia*, the Court explicitly stated that "Plaintiffs do not point to a company wide policy in violation of labor and wage laws." *Id*. at *10. Such is not the case here.

policy supports Durham's allegations that Sachs did not pay employees for buggy time. Meanwhile, the 2017 policy explicitly notes that "[t]he standard work day begins at 8:00am and ends at 4:30pm. Employees shall be at their buggie at 8:00 am . . . clean up is at is at 4:10pm. NO vehicles leave the parking lots until 4:30pm." ECF 52-2 at 9. While this formal policy facially suggests putative class members were compensated for buggy drive time, it is not inconsistent with Durham's theory, as narrowed by the common class questions. *See, e.g.*, FAC ¶ 28 ("Plaintiff and class members were told that they were required to stay on the job site during the entire workday from the beginning of the workday to the end of the workday."). "A formal policy [] will not save an employer in the face of allegations that a contrary and uniform company policy exists." *Campbell*, 2015 WL 7176110, at *8; *see also Brewer v. Gen. Nutrition Corp.*, 2014 WL 5877695, at *7 (N.D. Cal. 2014) ("[E]ven if an employer has a formal policy that is compliant with California law, proof of an informal but common scheduling policy that makes taking breaks extremely difficult, or other informal means of exerting pressure to discourage taking meal and rest breaks, would be sufficient to establish liability to a class.").

The Court is not convinced by Sachs' argument that that the nineteen Durham declarations are "substantially outweighed by Sachs' declarations and only raise individual issues." Opp. at 7. It does not follow that because Sachs has presented more declarations than Durham, individual issues will predominate the class action. The disagreement between the Sachs and Durham declarations is straightforward—either Sachs management uniformly required its employees to ride the buggies to their worksites before start time or it did not. Any individual inquiries, such as whether a certain crew foreman did not mandate this policy, do not threaten to overwhelm the common class questions. Consider *Chavez v. AmeriGas Propane, Inc.*, 2015 WL 12859721, at *34 (C.D. Cal. 2015), a case forwarded by Sachs in support of its argument. In *Chavez*, the defendant argued that "the fact intensive inquiry required to determine whether or not on-call time was compensable indicates that individual issues predominate" and forwarded declarations of the

putative class members that "show[ed] that whether time is compensable varies by district, by individual, and by time of year." 2015 WL 12859721, at *34. But there, the plaintiff challenged a five-prong "on call" time policy that provided that on call employees: (1) must not leave the district's general operating area; (2) must inform their manager where they can reached during on-call hours; (3) must be available to respond to every call that comes in while they are on duty; (4) may not consume any intoxicating substance while on on-call duty; and (5) will be disciplined if they do not respond to the call." *Id*. The Court concluded that it could not certify the class given "the variety of individual on-call experiences." *Id*. at *35; *see also Castillo v. Bank of Am., NA*, 980 F.3d 723, 732 (9th Cir. 2020) (no predominance where plaintiff was unable to "provide a common method of proof to establish [defendant's] classwide liability"). Although there are conflicting declarations here about putative class members' buggy time experiences, the declarations do not describe a "variety" of experiences among employees about the application of a multi-prong, fact-intensive policy. While there may be some individual inquiries the Court has to resolve, they do not overwhelm the straightforward common questions.

Similarly, in *Dudley v. Brookdale Senior Living*, "Plaintiffs' theory of liability [was] that Defendants had a written policy that allowed for meal breaks but did not specify that they should be taken at the end of the fourth hour or that employees were entitled to a premium hour." 2015 WL 12426082, at *8 (C.D. Cal. 21015). The Court concluded that this policy did not facially violate California law and thus "to establish liability, Plaintiffs would have to show that Defendants' failure to provide these specifications led to employees missing meal breaks – an inherently individualized inquiry." *Id*. Unlike in *Dudley*, where there was "no [] specific directive" regarding meal breaks, Durham alleges that Sachs management had a *uniform* policy that putative class members had to be at their daily work sites at start time. *Id*. at *9. Resolving this inquiry requires common proof—namely what directives were given by Sachs management about buggy time rides—and does not require individualized inquiry as to each class member.

19

Finally, the Court notes that Durham "need only show that there is a common contention capable of class wide resolution—not that there is a common contention that 'will be answered, on the merits, in favor of the class.'" *Alcantar v. Hobart Service*, 800 F.3d 1047, 1053 (9th Cir. 2015) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013)). At this stage of the litigation, the Court declines to weigh the declarations in favor of Sachs and deny class certification. *See Jaimez v. Daiohs USA, Inc*., 181 Cal. App. 4th 1286, 1300 (2010) ("[Defendant] submitted 25 declarations to support its contention that [plaintiff's] claims actually 'require extensive factual inquiry into each RSR's practices and daily activities.['] The trial court [improperly] focused on the merits of the declarations, evaluating the contradictions in the parties' responses to the company's uniform policies and practices, not the policies and practices themselves.").

## 2. Superiority

To satisfy Rule 23(b)(3), Durham also must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23 lists the following factors that Courts should consider in making this determination:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Durham argues that class litigation is the superior means of litigating the claims asserted because the factors favor certification. Mot. at 14–15. Durham contends that the potential class members would not be incentivized to pursue an individual action because "putative class

United States District Court
Northern District of California

members are hourly employees with relatively modest individual claims and limited resources." Mot. at 14. He also notes that because the class "claims are based on common policies and practices, [they] can be most efficiently litigated on a class-wide basis." Mot. at 14. And finally, Durham argues that the class action "is manageable and well-suited for class certification where Defendants' own timekeeping and payroll records, including dates of employment and rates of pay, can be used to show the violations and measure damages." Mot. at 15. Sachs does not object to the motion on this basis.

The Court agrees with Durham and finds a class action here would be the superior method of adjudication. The alternative to class action would likely mean an abandonment of claims by most class members since the amount of individual recovery is relatively small. Cf. *Mazza*, 254 F.R.D. at 628 (finding superiority when damages were $4,000). As such, the Court finds the superiority requirement met.

### D.     Appointment of Lead Counsel

Federal Rule of Civil Procedure 23(g)(2) states that: "When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). Rule 23(g)(1) requires the court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

In addition, the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Rule 23(g)(4) states that the duty of class counsel is to fairly and adequately represent the interests of the class.

United States District Court
Northern District of California

Plaintiffs have retained highly capable counsel with extensive experience in prosecuting wage and hour class actions. *See* Dion-Kindem Decl. ¶¶ 1–12; Blanchard Decl. ¶¶ 2–9. Accordingly, and without any opposition, the Court finds that the Dion-Kindem Law Firm and the Blanchard Law Group, APC are adequate under Rule 23(g)(1) and (4).

## IV.    ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion for Class Certification is DENIED AS MOOT as to the Unpaid Wages Class (Meal Period Time).

2.    Plaintiff's Motion for Class Certification is GRANTED as to the Unpaid Wages Class (Buggy Time Claim), Termination Pay Subclass, and Wage Statement Subclass. The action is certified for the Rule 23(b)(3) Class and Subclasses as to wage and hour claims brought pursuant to the Cal. Labor Code and the UCL.

3.    Pursuant to Rule 23(c)(1)(B),

   a.    The Buggy Time Class is defined as, "all non-exempt employees of Sachs Electric Company who worked on the construction of the California Flats Solar Project at any time within the period from July 25, 2014 through the date of class certification who were not paid for all time spent after arriving at the parking lots and waiting for and traveling to their daily work sites and the time spent waiting for and traveling from their daily work sites to the parking lots.

   b.    The Termination Pay Subclass is defined as, "all members of Class 1 whose employment with Sachs Electric Company terminated within the period beginning July 25, 2015 to the date of class certification."

   c.    The Wage Statement Subclass is defined as, "all member of Class 1 who received wage statements from Sachs Electric Company during the period

1    beginning July 25, 2017 to the date of class certification."

2    4.    The class issues are (1) whether Sachs had a uniform policy that workers were

3    required to engage in buggy rides before the start time from which they were

4    paid; (2) whether Buggy Time constituted "hours worked" under California

5    law; and (3) whether Sachs uniformly compensated class members for Buggy

6    Time.

7    5.    The Court appoints William Durham as the class representative.

8    6.    Pursuant to Rule 23(g), the Court appoints the Dion-Kindem Law Firm and the

9    Blanchard Law Group, APC as co-class counsel.

10   7.    On January 21, 2021, the Court lifted the stay on Plaintiff's Drive Time claims.

11   On that date, Plaintiff represented to the Court that he intends to file a motion

12   for class certification related to that claim. Because the Court expects class

13   notice will be sent only once, Plaintiff need not file a notice plan related to the

14   above classes until the Court considers the forthcoming class certification

15   motion.

16

17   Dated: January 25, 2021

18                                                    _____

19                                                    BETH LABSON FREEMAN
                                                      United States District Judge
20

21

22

23

24

25

26

27

28