**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| WILLIAM DURHAM, et al., | Case No. 18-cv-04506-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION** |
| SACHS ELECTRIC COMPANY, et al., | |
| Defendants. | [Re: ECF 90] |

This wage and hour class and PAGA action arises out of Plaintiff William Durham and the proposed class members' employment by Defendant Sachs Electric Company ("Sachs") at the California Flats Solar Project. Presently before the Court is Plaintiff's Second Motion for Class Certification. Mot., ECF 90-1. Durham seeks to certify five California classes (three classes and two subclasses) under Rule 23(b)(3). Notice, ECF 90. For each class, Durham seeks to bring the following five claims: (1) failure to pay wages for hours worked under Cal. Labor Code § 1197; (2) wage statement and record-keeping violations under Cal. Labor Code § 226; (3) failure to pay waiting time wages under Cal. Labor Code § 203; (4) violation of Cal. Labor Code § 2802; and (5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. First Am. Compl. ("FAC"), ECF 13. Durham separately brings a representative claim for the recovery of civil penalties under the California Private Attorney General Act ("PAGA"), Cal. Labor Code § 2698, *et seq. Id.*

The Court held a hearing on this motion on June 24, 2021. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for class certification.

**I.    BACKGROUND**

United States District Court
Northern District of California

### A.    California Solar Flats Project

Durham alleges that Sachs acted as an employer, co-employer, or joint-employer of Durham and the proposed class members during their work on the California Flats Solar Project, which involved the construction and development of photovoltaic power. FAC ¶¶ 8-9. Relevant here, Durham alleges that Sachs violated California labor laws when the company "controlled" employees "during the mandated travel time before and after their scheduled shifts." *Id.* ¶ 29. The SAC explains:

> After Plaintiff and class members were "badged in" at the security entrance, they were then required to travel approximately 12 or more miles along a route designated by Defendants, at a slow speed limit designated by Defendants, and using non-public roads controlled by Defendants to reach parking lots controlled by Defendants and arrive by a specific time designated by Defendants. Plaintiff and class members were not able to use this travel time effectively for their own purposes.

*Id.* ¶ 27. "[T]ravel time generally took 45 minutes or more each way." *Id.* ¶ 29.

### B.    Named Plaintiff

Durham was employed at the California Flats Solar Project by Sachs as a journeyman wireman, crew foreman, and general foreman between July 2016 and September 2017. Durham Decl., ECF 90-4 ¶ 2. Durham alleges that Sachs required California Flats Solar Project employees to report to the Security Gate Entrance each day. *Id.* ¶ 12. At the Security Gate Entrance, Durham was required to wait in line to go through a security process. *Id.* ¶ 12; *see, e.g., id.* ¶¶ 16 ("I was told that we workers were required to roll down our windows and present our security identification badges for review and scanning by a security guard."), 17 ("As I was going through the security entrance process, the security guards would stand beside each vehicle and I could see the security guards as they were looking into the windows of my vehicle and of other vehicles."). Durham was then required to drive from the Security Gate Entrance down the Access Road to the parking lots. *Id.* ¶ 14. During this drive, Durham was "subject to all the job site work policies,

2

rules and restrictions of the Solar Site including many rules of the road that applied to going

through and driving on the restricted Access Road between the Security Gate and the parking lots

inside the Solar Site. These Solar Site rules of the road were much more restrictive than the rules

that applied to public roads." *Id.* ¶ 18; *see also id.* ¶¶ 18 (listing rules), 19 (same), 20-21

(explaining that employees were not permitted to walk or bike on the Access Road to the parking

lots). At the end of the day, Sachs required Durham to go through another security process. *Id.* ¶

28. Durham contends that he was not paid while waiting in security lines or while driving down

between the Security Gate and the parking lots. *Id.* ¶ 43. Durham further contends that California

Flats Solar Project management, which includes Sachs, told workers that if they did not follow the

Project rules, they would be disciplined, suspended, or fired. *Id.* ¶¶ 4-7.

      **C.**       **Proffered Evidence**

        In support of his Motion for Class Certification, Durham offers the Court seven additional

declarations from Sachs employees and putative class members. *See* ECF 90-5-11. These

declarations largely mimic Durham's declaration as detailed above. Sachs, for its part, offers the

declaration of Sachs Senior Vice President Michael Rega. Rega Decl., ECF 93-2. It also offers

declarations filed in opposition to class certification in *Justin Griffin v. Sachs Electric Company,*

*et al.*, Case No. 5:17-cv-03778-BLF (the "*Griffin* action").[1] Opp., ECF 93 at 4, fn. 1. The

declarations are from James Scott Wilkinson, a senior project manager at Sachs, and Abraham

Babcock, a project director for McCarthy Building Companies, Inc. Wilkinson Decl., ECF 93-1,

Exh. 1; Babcock Decl., ECF 93-1, Exh. 2.

      **D.**       **Proposed Class Definitions**

        Durham seeks to certify five classes under 23(a) and 23(b)(3):

        **i.**       **Unpaid Wages Class (Security Time):**

---

[1] The *Griffin* action is a related wage and hour dispute arising out of the California Flats Solar Project.

3

> All non-exempt employees of or worked for Sachs Electric Company who worked on the construction of the California Flats Solar Project at any time within the period from July 25, 2014 through the date of class certification who were not paid for all time waiting in line to go through and going through the mandatory exit security process.

    ii.    **Unpaid Wages Class (Controlled Travel Time):**

> All non-exempt persons who were employees of or worked for Sachs Electric Company on the construction of the California Flats Solar Project at any time within the period from July 25, 2014 through the date of class certification who were not paid for all time traveling from the badging-in location at the security gate to when they began to be paid and from when they stopped being paid to when they arrived back at badging-out location at the security gate.

    iii.    **Unpaid Wages Class (Paragraph 5(A) Travel Time):**

> All non-exempt persons who were employees of or worked for Sachs Electric Company on the construction of the California Flats Solar Project at any time within the period from July 25, 2014 through the date of class certification who were not paid for all time traveling from the badging-in location at the security gate to when they began to be paid and from when they stopped being paid to when they arrived back at badging-out location at the security gate.

    iv.    **Termination Pay Subclass:**

> All member of Class 1, 2, or 3 whose employment with Sachs Electric Company terminated within the period beginning July 25, 2015 to the date of class certification.

    v.    **Wage Statement Subclass:**

> All member of Class 1, 2, or 3 whose received wage statements from Sachs Electric Company during the period beginning July 25, 2017 to the date of class certification.

Notice at 2-3.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class actions. "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). The burden is on the party seeking certification

4

to show, by a preponderance of the evidence, that the prerequisites have been met. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011).

Certification under Rule 23 is a two-step process. The party seeking certification must first satisfy the four threshold requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy. Specifically, Rule 23(a) requires a showing that

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

The party seeking certification must then establish that one of the three grounds for certification applies under Rule 23(b). Durham invokes Rule 23(b)(3), which provides that a class action may be maintained where

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

A Rule 23(b)(3) class is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotation marks omitted). "When common questions present

United States District Court
Northern District of California

a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (citation and internal quotation marks omitted); *accord Mazza*, 666 F.3d at 589.

In considering a motion for class certification, the substantive allegations of the complaint are accepted as true, but "the court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through a class action." *Hanni v. Am. Airlines, Inc.*, No. 08-cv-00732, 2010 WL 289297, at *8 (N.D. Cal. Jan. 15, 2010); *see also Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 447 (N.D. Cal. 2012) ("[Courts] need not blindly rely on conclusory allegations which parrot Rule 23 requirements." (citation and internal quotation marks omitted)). Accordingly, "the court may consider supplemental evidentiary submissions of the parties." *Hanni*, 2010 WL 289297, at *8 (citations omitted); *see also Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

"A court's class-certification analysis . . . may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (citation and internal quotation marks omitted). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

## III.    DISCUSSION

The parties have submitted evidence in support of their respective positions. The Court has reviewed all of this evidence in detail. For the reasons discussed below, the Court is persuaded that it is appropriate to certify the three classes and two subclasses under Rule 23(b)(3) for each of

the five causes of action.[2] This certification, however, is made with modification to the class definitions. 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1759 (3d ed.) ("[T]he court may construe the complaint or redefine the class to bring it within the scope of Rule 23 or it may allow plaintiff to amend in order to limit the class.").

## A.   Plaintiff Has Met the Rule 23(a) Requirements

A named plaintiff bears the burden of demonstrating that the class meets the following four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended by*, 273 F.3d 1266 (9th Cir. 2001) (citing *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977)).

### 1.   Numerosity

Rule 23(a)(1) requires that the size of the proposed class be "so numerous that joinder of all the class members is impracticable." Impracticability is not impossibility, and instead refers only to the "difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (citation and internal quotation marks omitted). While there is no set number cut-off, the number of individuals who will satisfy the requirements for membership in the proposed classes in this case easily satisfies the numerosity requirement. *See Litty v. Merrill Lynch & Co.*, No. cv 14-0425 PA, 2015 WL

---

[2] Sachs argues that the Court should not entertain certifying a class given the underlying claims have no legal merit. Opp. at 1-2. Sachs requests that this Court instead resolve its motion for judgment on the pleadings first. *Id.* (citing *Wright v. Schock*, 742 F.2d 541 and *Kim v. Commandant*, 772 F.2d 521, 524 (9th Cir. 1985)). This argument is moot given the Court has denied Sachs' motion for judgment on the pleadings and no motion for summary judgment is currently pending before the Court. *See* ECF 103. Accordingly, the Court proceeds to consider the merits of Plaintiff's motion for class certification.

4698475, at *3 (C.D. Cal. Apr. 27, 2015) ("[N]umerosity is presumed where the plaintiff class contains forty or more members."); *Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) (noting that courts have certified classes as small as 14 and have often certified classes with 50 to 60 members).

The Court concludes there is sufficient numerosity. There are approximately 450 class members who worked as Sachs employees at the California Flats Solar during the class period. Mot. at 8 (citing *Durham v. Sachs Electric Company*, No. 18-CV-04506-BLF, 2021 WL 242874, at *6 (N.D. Cal., Jan. 25, 2021)). Joinder of each of these affected individuals would be impracticable. Sachs does not dispute that this requirement is satisfied.

### 2. Commonality

The commonality requirement of Rule 23(a)(2) is met where "the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] with one stroke.'" *Mazza*, 666 F.3d at 588 (internal citation omitted) (quoting *Dukes*, 564 U.S. at 350). Thus, a plaintiff seeking to certify a class must "demonstrate 'the capacity of classwide proceedings to generate common answers' to common questions of law or fact that are 'apt to drive the resolution of the litigation.'" *Id.* (quoting *Dukes*, 564 U.S. at 350). "[C]ommonality only requires a single significant question of law or fact." *Id.* at 589 (citing *Dukes*, 564 U.S. at 358). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

Durham alleges that common issues to the class include:

- Whether any of the exit Security Time constituted compensable "hours worked" under California law.

- Whether the Travel Time between the Security Gate and the parking lots constituted compensable "hours worked" under California law.

- Whether the Security Gate was the "first location where the employee's presence is required" for purposes of Paragraph 5(A) of Wage Order 16.

Mot. at 8.

The Court finds that Durham has satisfied the commonality requirement. Durham's claims satisfy the low threshold of Rule 23(a)(2). In particular, Durham has identified common legal questions to the class members, such as Sachs' obligations under California Labor Code §§ 201–03, 226, 1197, and 2802 and the UCL. These commonalities are sufficient to satisfy Rule 23(a)(2). Sachs largely objects to the presence of commonality in the context of the Rule 23(b)(3) predominance inquiry. *See* Opp. at 3-6. The Court will discuss Sachs' objections when it analyzes predominance.

### 3.    Typicality

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citations omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotation marks and citation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Class certification is inappropriate where a putative class representative is subject to unique defenses

which threaten to become the focus of the litigation. *See Hanon v. Dataprods. Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

Durham has demonstrated that his claims are representative of the claims of the class. Durham alleges that because of Sachs' security and drive time policies, he was not paid fair wages under California law. *See* Mot. at 8-9; Durham Decl. at ¶¶ 18 ("I was told at the Solar Site Orientation and in meetings that while we workers were inside the Security Gate of the Solar Site, we were subject to all the job site work policies, rules and restrictions of the Solar Site including many rules of the road that applied to going through and driving on the restricted Access Road between the Security Gate and the parking lots inside the Solar Site"), 19 ("I was told at the Solar Site Orientation and in meetings that other rules applied to all Sachs workers at all times, not only when we are traveling on the Access Road but also while we were inside the Security Gate and until we had gone the exit security process at the Security Site and left the Solar Site."), 43 ("workers were not paid for any of the time waiting for and going through the mandatory entrance and exit security processes or for the time traveling between the Security Gate and the parking lots"). So too for the putative class members. *See, e.g.,* ECF 90-5 ¶ 44; ECF 90-6 ¶ 46; ECF 90-7 ¶ 30; ECF 90-8 ¶ 42; ECF 90-9 ¶ 47; ECF 90-10 ¶ 36; ECF 90-11 ¶ 39. If the putative class members were to proceed in an action parallel to this action, they would advance legal and remedial theories similar, if not identical, to those advanced by Durham.

### 4. Adequacy

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." "Determining whether the representative parties adequately represent a class involves two inquiries: (1) whether the named plaintiff and his or her counsel have any conflicts of interest with other class members and (2) whether the named plaintiff and his or her counsel will act vigorously on behalf of the class." *Calvert v. Red Robin Int'l, Inc.*, No. C 11–

United States District Court
Northern District of California

03026, 2012 WL 1668980, at *2 (N.D. Cal. May 11, 2012) (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). These inquiries are guided by the principle that "a class representative sues, not for himself alone, but as representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity." *Id.* (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949)).

Durham contends that he is an adequate representative for the class. Mot. at 9. Sachs does not object to class certification on this ground. The Court is satisfied that neither Durham nor Durham's counsel has any conflicts of interest and that each will act vigorously on behalf of the class. *See* Durham Decl. ¶¶ 45-50; Dion-Kindem Decl., ECF 90-2 ¶¶ 2-12; Blanchard Decl., ECF 90-3 ¶¶ 2-10.

### B.   Plaintiff Has Met the Rule 23(b)(3) Requirements

"[T]he presence of commonality alone [under 23(a)(2)] is not sufficient to fulfill Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1022. Rather, "[t]o qualify for certification under [Rule 23(b)(3)], a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). In the instant case, Durham seeks to certify three Rule 23(b)(3) classes and two Rule 23(b)(3) subclasses.

#### 1.   Predominance

Under Rule 23(b)(3), plaintiffs must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The Rule 23(b)(3) predominance requirement is "even more demanding" than Rule 23(a)'s commonality counterpart. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

United States District Court
Northern District of California

representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted). The Ninth Circuit has held that "there is clear justification for handling the dispute on a representative rather than an individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 William Rubenstein, Newberg on Class Actions, § 4:49 at 196–97 (5th ed. 2012)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quoting 7AAC Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1778 at 123–24 (3d ed. 2005)).

The predominance requirement is the biggest hurdle for Durham to meet in his quest for certification of the Unpaid Wages Class (Security Time), Unpaid Wages Class (Controlled Travel Time), and Unpaid Wages Class (Paragraph 5(A) Travel Time). These classes encompass employees who were not paid while (1) waiting at the Security Gate and going through the mandatory entrance and exit security process and (2) traveling down the Access Road. Mot. at 3-8 (explaining theories of liability). According to Sachs, Durham fails to meet the predominance requirement. *See* Opp. at 3-6. To this end, it contends that (1) Durham fails to establish that a common policy or practice will predominate in a class-wide trial, Opp. at 3; (2) Sachs' alleged searching of employees does not warrant class certification, Opp. at 3-5; and (3) bus riders and carpoolers should be excluded from the class, Opp. at 5-6.

Durham's class certification bid is predicated on Sachs' security and drive time policies. "Claims alleging that a uniform policy consistently applied to a group of employees is in violation

12

of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1033 (2012). Durham has presented sufficient evidence, in the form of declarations from eight putative class members, to demonstrate that a Sachs policy exists as to security and drive time. *See* ECF 90-4-11. The declarations generally state that Sachs management told employees at new hire orientation and worker meetings that they were required to follow numerous rules. These rules included reporting to the Security Gate at start time, following mandatory security exit and entrance procedures, and following road rules during the drive between the Security Gate and the parking lot. The declarations further state that workers were not paid between the Security Gate Entrance and the parking lots. The Court has granted class certification motions in similar circumstances in *Huerta v. CSI Elec. Contractors, Inc.,* No. 18-CV-06761-BLF, 2021 WL 1323425 (N.D. Cal. Mar. 12, 2021).

Sachs contends that its alleged random searching of employee vehicles does not warrant class certification. Opp. at 3-5. But Sachs misunderstands Durham's theory of liability. Durham is not alleging that merely "being subject to searches exerts control over employees, warranting compensation." Opp. at 4. Durham is alleging that time spent by employees waiting for and going through mandatory security processes constitutes "hours worked" and that, because the Security Gate was the first location where Sachs required the class members' presence, all travel time from the Security Gate to the daily work site and back must be compensated pursuant to Paragraph 5(A) of Wage Order 16. Mot. at 3, 7. Indeed, there is sufficient evidence before the Court that Sachs' entry and exit security policy entailed not just discretionary car searches, but also the scanning of badges by security guards. *See, e.g.,* Durham Decl. ¶ 16.

Despite the existence of common security and drive time policies, the Court finds that there is insufficient evidence that this policy uniformly applied to all employees in the proposed Unpaid Wages Class (Security Time), Unpaid Wages Class (Controlled Travel Time), and Unpaid

United States District Court
Northern District of California

1   Wages Class (Paragraph 5(A) Travel Time).  In particular, the Court credits Sachs' argument that

2   bus riders should be excluded from these classes.  Opp. at 5 ("Plaintiff's primary argument as to

3   why the Drive is compensable is because employees are required to "report" to the guard shack,

4   roll down their windows, and scan a badge before entering the Project. This is completely absent

5   with employees riding the bus."). The only evidence properly submitted[3] by Durham suggests that

6   bus riding employees were subject to different restrictions than car riding employees.  Only one of

7   the declarations provided by Durham is from an employee who rode the bus to work: "At some

8   point, riding that bus was changed from mandatory to optional. During the period of time that the

9   school buses were used, I sometimes drove a bus. When I drove a bus, I was paid for the drive but

10  when I was a passenger in one of the buses, I was not paid." ECF 90-11 ¶ 6. This statement is the

11  extent of the employee's recounting of the bus ride. *See generally id*. Another putative class

12  member—who didn't even ride the bus— alleges that "[t]here were two lanes for badging and one

13  lane for busses to drive through the Security Gate Entrance without badging. The people on the

14  busses badged in at a bus stop that was not on the Solar Site." ECF 90-9 ¶ 14; *see also* Wilkinson

15  Decl., ¶ 16; Babcock Decl., ¶ 7. The Court is also persuaded by Sachs' argument that employees

16  who opted into riding the bus were able to listen to music, socialize among themselves, and sleep

17  during the drive to the parking lot. *See* Opp. at 5 (citing *Morillion v. Royal Packing Co*., 22 Cal.

18  4th 575, 588 (2000)). And Durham's argument that employees could not conduct any "personal

19  business" while on the bus fails to hold weight in the context of an employee's voluntary decision

20  to ride the bus to work. Reply at 3. The Court has no meaningful evidence before it about the

21  security process for bus riders, about the first location bus riders were required to show up, or

22

23  _____

24  [3] The Court declines to consider Durham's eleventh-hour supplemental declaration. Supp. Durham Decl., ECF 94-1. Even ignoring the fact that this declaration is procedurally improper, *see United States v. Romm*, 455 F.3d 990, 997 (9th Cir.2006) ("[A]rguments not raised by a party in its opening brief are deemed waived."), Durham did not ride the bus to work and thus lacks foundation to speak about the security processes to which bus riders were subject.

25

about the applicability, enforcement, and manifestation of Sachs' road rules on bus riders. This flaw is significant as these kind of facts would support the core of Durham's theory of liability as to the three proposed classes. *See* Mot. at 3-8. Durham had ample space in his briefing to discuss this issue—on which he spent a scant two pages—but, for reasons not apparent to the Court, chose not to do so. The Court highlights one additional flaw with including bus riders in the proposed classes: namely, whether Durham would be able to represent them given the divergence of his experience at the California Flats Solar Project. *See* Opp. at 5 (citing Rega Decl. ¶ 3). The Court has serious doubts whether such representation would be permissible given there is no evidence Durham ever rode the bus to work. Because including bus riders in the Unpaid Wages Class (Security Time), Unpaid Wages Class (Controlled Travel Time), and Unpaid Wages Class (Paragraph 5(A) Travel Time) undermines class cohesion, the Court declines to so include them. The Court edits the class definitions accordingly. *See* 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1759 (3d ed.).

The Court will also permit carpoolers to remain in the Unpaid Wages Class (Security Time), Unpaid Wages Class (Controlled Travel Time), and Unpaid Wages Class (Paragraph 5(A) Travel Time). There is sufficient evidence that carpoolers were subject to the same uniform security policy as employees who chose to commute via car solo. Even Sachs acknowledges that the carpoolers had to "stop at the guard shack." Opp. at 5. There is also sufficient evidence that carpoolers were subject to the restrictions of the Access Road. In sum, the Court finds that the common security and drive time policies evinced by Durham properly encompass carpoolers.

### 2. Superiority

To satisfy Rule 23(b)(3), Durham also must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23 lists the following factors that Courts should consider in making this determination:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Durham argues that class litigation is the superior means of litigating the claims asserted. Mot. at 10. Sachs does not object to the motion on this basis. The Court agrees with Durham and finds a class action here would be the superior method of adjudication. The alternative to class action would likely mean an abandonment of claims by most class members since the amount of individual recovery is relatively small. Cf. *Mazza*, 254 F.R.D. at 628 (finding superiority when damages were $4,000). As such, the Court finds the superiority requirement met.

## C.    Appointment of Lead Counsel

Federal Rule of Civil Procedure 23(g)(2) states that: "When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). Rule 23(g)(1) requires the court to consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

In addition, the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Rule 23(g)(4) states that the duty of class counsel is to fairly and adequately represent the interests of the class.

Plaintiffs have retained capable counsel with extensive experience in prosecuting wage and hour class actions. *See* Dion-Kindem Decl. ¶¶ 1–12; Blanchard Decl. ¶¶ 1–10. Accordingly, and without any opposition, the Court finds that the Dion-Kindem Law Firm and the Blanchard Law Group, APC are adequate under Rule 23(g)(1) and (4).

## IV.    ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion for Class Certification is GRANTED IN PART and DENIED IN PART. The action is certified for the Rule 23(b)(3) Class and Subclasses as to wage and hour claims brought pursuant to the Cal. Labor Code and the UCL.

2.    Pursuant to Rule 23(c)(1)(B),

   a.   The Unpaid Wages Class (Security Time) is defined as "all non-exempt employees of or worked for Sachs Electric Company who worked on the construction of the California Flats Solar Project at any time within the period from July 25, 2014 through the date of class certification who did not ride the bus and were not paid for all time waiting in line to go through and going through the mandatory exit security process."

   b.   The Unpaid Wages Class (Controlled Travel Time) is defined as "all non-exempt persons who were employees of or worked for Sachs Electric Company on the construction of the California Flats Solar Project at any time within the period from July 25, 2014 through the date of class certification who did not ride the bus and were not paid for all time traveling from the badging-in location at the security gate to when they began to be paid and from when they stopped being paid to when they arrived back at badging-out location at the security gate."

United States District Court
Northern District of California

   c.  The Unpaid Wages Class (Paragraph 5(A) Travel Time) is defined as "all non-exempt persons who were employees of or worked for Sachs Electric Company on the construction of the California Flats Solar Project at any time within the period from July 25, 2014 through the date of class certification who did not ride the bus and were not paid for all time traveling from the badging-in location at the security gate to when they began to be paid and from when they stopped being paid to when they arrived back at badging-out location at the security gate."

   d.  The Termination Pay Subclass is defined as "all member of Class 1, 2, or 3 whose employment with Sachs Electric Company terminated within the period beginning July 25, 2015 to the date of class certification."

   e.  The Wage Statement Subclass is defined as "all member of Class 1, 2, or 3 whose received wage statements from Sachs Electric Company during the period beginning July 25, 2017 to the date of class certification."

3.   The class issues are (1) Whether any of the exit Security Time constituted compensable "hours worked" under California law; (2) Whether the Travel Time between the Security Gate and the parking lots constituted compensable "hours worked" under California law; and (3) Whether the Security Gate was the "first location where the employee's presence is required" for purposes of Paragraph 5(A) of Wage Order 16.

4.   The Court appoints William Durham as the class representative.

5.   Pursuant to Rule 23(g), the Court appoints the Dion-Kindem Law Firm and the Blanchard Law Group, APC as co-class counsel.

6.   Counsel are directed to meet and confer concerning the manner, form and content of notice to be provided to the absent class members, and to submit a

18

proposal concerning the same to the Court in writing no later than September 15, 2021.

Dated: August 20, 2021

BETH LABSON FREEMAN
United States District Judge

19