UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM DURHAM, et al.,<br>    Plaintiffs,<br>v.<br>SACHS ELECTRIC COMPANY, et al.,<br>    Defendants. | Case No. 18-cv-04506-BLF<br><br>**FINAL APPROVAL ORDER**<br>[Re: ECF No. 117] |

Before the Court is Plaintiff William Durham's Motion for Final Approval of Class Action Settlement and Award of Attorney's Fees and Costs and Class Representative Award. *See* ECF No. 117. Mr. Durham seeks approval of the class action settlement in this wage and hour class action pertaining to workers at the California Flats Solar Project. *See id.* The settlement provides for a gross settlement amount of $775,000 to be distributed to class members. Mr. Durham also seeks approval for the following pre-distribution deductions from the gross settlement amount: (1) an attorneys' fees award of $258,333; (2) costs of $8,141.81; (3) settlement administrator costs of $11,000; (4) a California Private Attorney General Act payment of $22,500; and (5) a $5,000 class representative service award to Mr. Durham. No oppositions have been filed and there are no objectors. The Court held a hearing on the Motion on June 16, 2022.

For the reasons stated on the record and explained below, the Court GRANTS Mr. Durham's motion.

## I. BACKGROUND

Plaintiff William Durham filed this action against Sachs Electric Company ("Sachs") and McCarthy Building Companies, Inc. ("McCarthy") on July 25, 2018, on behalf of himself and others similarly situated. *See* Complaint, ECF No. 1. In his First Amended Complaint ("FAC"), Mr.

Durham alleged that he was employed by Defendants in connection with the California Flats Solar Project ("Project"). *See* FAC, ECF No. 13 ¶¶ 5, 8, 9. Mr. Durham alleged that Defendants required Mr. Durham and other employees to "badge in" at a security entrance to the Project site at the beginning of their shifts. *See id.* ¶ 26. Once they had entered the site, employees were required to travel approximately 12 miles at a slow speed limit using non-public roads to reach site parking lots. *See id.* ¶ 27. Once at the parking lots, employees were required to take company buggies to specific locations where they would continue their work for the day. *See id.* ¶ 28. Mr. Durham alleged that the time recorded for employees' hours worked did not reflect travel time (1) from the security gate to the parking lots ("Drive Time") or (2) from the parking lots to specific work sites on company buggies ("Buggy Time"). *See id.* Mr. Durham alleged that this travel time generally took 45 minutes or more each way. *See id.* ¶ 29. Mr. Durham further alleged that employees were not paid for time spent on meal breaks or when their meal breaks or rest breaks were interrupted by work-related duties ("Meal Period Time"), and they were not allowed to go back to their vehicles during the workday. *See id.* ¶¶ 31–32.

Mr. Durham brought claims under the California Labor Code for (1) failure to pay wages for hours worked under § 1197; (2) wage statement and record-keeping violations under §§ 226(a) and 1174; (3) failure to pay waiting time wages under §§ 201–203; (4) failure to reimburse employees for use of personal vehicles for employer-controlled travel in violation of § 2802; and (5) violation of the California Unfair Competition Law ("UCL"). *See id.* ¶¶ 21–67. Mr. Durham also sought recovery of civil penalties under the California Private Attorney General Act ("PAGA"). *See id.* ¶¶ 68–73.

On August 7, 2018, the above-captioned case was related to another labor class action related to the California Flats Solar Project—*Griffin v. Sachs Electric Co. et al*, No. 17–cv–03778–BLF (N.D. Cal.) (the "*Griffin* Action"). On November 13, 2019, the case was consolidated with another California Flats Solar Project labor class action brought by Derrious Browning and Darrell Love against McCarthy—*Browning et al v. McCarthy Building Companies, Inc.*, No. 18-cv-05882 (N.D. Cal.). *See* ECF No. 35. On December 3, 2019, the Court dismissed Mr. Durham's claims against McCarthy pursuant to stipulation. *See* ECF No. 39. Mr. Browning and Mr. Love settled their claims

1 against McCarthy on May 11, 2020. *See* ECF No. 43. The Court granted final approval of Mr. Browning and Mr. Love's settlement with McCarthy on April 29, 2021. *See* ECF No. 99. Another labor class action related to the California Flats Solar Project was before this Court—*Huerta v. First Solar, Inc. et al*, No. 18-cv-02847-BLF (N.D. Cal.) (the "*Huerta* Action").

On May 28, 2019, this Court granted Sachs' motion for summary judgment in the *Griffin* Action, finding that the plaintiff's claims based on Drive Time were not compensable. *See Griffin* Action, ECF No. 113. As a result, the Court stayed the Drive Time claims in the above-captioned case while the plaintiff in the *Griffin* Action appealed the summary judgment order. *See* ECF No. 35.

On June 15, 2020, Mr. Durham filed a motion for class certification as to the non-Drive Time claims, seeking certification of four classes: (1) an "Unpaid Wages Class" who were not paid for Buggy Time from July 25, 2014; (2) an "Unpaid Wages Class" who were not paid for Meal Time from July 25, 2014; (3) a "Termination Pay Class" whose employment was terminated from July 25, 2015; and (4) a "Wage Statement Class" who received wage statements from July 25, 2017. *See* ECF No. 45. Further, Sachs filed a motion for judgment on the pleadings, seeking judgment that Mr. Durham's claim based on duties during meal periods was barred by a collective bargaining agreement. *See* ECF No. 47. Additionally, Sachs filed a motion for partial summary judgment, which sought judgment that, *inter alia*, Mr. Durham's Buggy Time claims were not compensable based on a collective bargaining agreement. *See* ECF No. 53. The Court granted Sachs' motion for judgment on the pleadings and partially granted Sachs' summary judgment motion. Further, the Court denied Sachs' summary judgment motion regarding Mr. Durham's Buggy Time claims. *See* ECF No. 73. Additionally, the Court granted class certification as to the Buggy Time Unpaid Wages Class, the Termination Pay Class, and the Wage Statement Class, but denied as moot Mr. Durham's motion for class certification as to the Meal Time Unpaid Wages Class in light of the order on Sachs' motion for judgment on the pleadings. *See* ECF No. 80.

On December 14, 2020, the Ninth Circuit affirmed the Court's summary judgment ruling on the Drive Time claims in the *Griffin* Action. *See Griffin* Action, ECF No. 136. Accordingly, the Court lifted the stay on Mr. Durham's Drive Time claims in the above-captioned case. *See*

3

ECF No. 79. On February 19, 2021, Mr. Durham filed a class certification motion on the Drive Time claims. *See* ECF No. 90. Further, on February 26, 2021, Sachs filed a second motion for judgment on the pleadings—this time seeking judgment that the Drive Time claims were not compensable as a matter of law. *See* ECF No. 91. The Court denied Sachs' motion, finding the issues raised to be more appropriate to consider in a summary judgment motion. *See* ECF No. 103. Further, the Court granted in part Mr. Durham's Drive Time claims, certifying five additional classes related to those claims. *See* ECF No. 107. On June 25, 2021, the Court granted partial summary judgment in favor of the Defendants in the *Huerta* Action—again finding that Drive Time claims were not compensable. *See Huerta* Action, ECF No. 153.

On August 27, 2021, Mr. Durham notified the Court that the parties had settled. *See* ECF No. 108. Mr. Durham moved for preliminary approval of the class settlement on September 15, 2021, ECF No. 109, which the Court granted on January 31, 2022, ECF No. 116. The Settlement Agreement defines the Settlement Class (the "Class") as follows:

> All non-exempt employees of Sachs Electric Company who worked at the California Flats Solar Project within the period beginning July 25, 2014 and ending on the date of preliminary approval of the settlement.

*See* Settlement Agreement, ECF No. 109-2, Ex. 1. The Settlement Agreement provides that Class Counsel is Lonnie C. Blanchard III of the Blanchard Law Group, APC and Peter R. Dion-Kindem of Peter R. Dion-Kindem, P.C. ("Class Counsel"). *See id.* ¶ 5. The Settlement Agreement further provides for a total settlement amount of $775,000, with the following deducted from the total settlement amount: (1) $5,000 for the service award to Mr. Durham; (2) $258,333 in attorneys' fees; (3) $25,000 in attorneys' costs; (4) $22,500 for the PAGA payment to the California Labor and Workforce Development Agency; and (5) $11,000 for the expenses of the settlement administrator Simpluris, Inc. ("Settlement Administrator"). *See id.* §§ 32, 48. The Settlement Agreement provides that the remaining funds ($453,167) will be mailed to Class members in proportion to each member's gross earnings received during the Class Period (July 25, 2014 to the date of preliminary approval) as a portion of the total earnings received during the Class Period by

Class members. *See id.* ¶ 48. The Settlement Agreement provides that the proceeds of any checks not cashed after 180 days will go to the Justice Gap Fund as the *cy pres* recipient. *See id.* ¶ 49. Additionally, the Settlement Agreement provides that notice of the settlement will be mailed to Class members and Class members will have 60 days from the date of the initial mailing to object or opt-out of the settlement. *See id.* ¶¶ 19, 20, 46.

Following preliminary approval, the Settlement Administrator mailed class notices to 767 unique Class members to last known addresses provided by Defendant. *See* Butler Decl., ECF No. 117-4 ¶ 6. After 80 notices were returned by the post office, up-to-date addresses were located and 74 of the returned notices were mailed to a new address. *See id.* ¶ 9. Six notices were undeliverable because a better address could not be found. *See id.* According to the Settlement Administrator, the highest amount to be paid to a Class member is $5,762.14 and the average is $591.60. *See id.* ¶ 13. The Settlement Administrator received one opt-out and no objections. *See id.* ¶¶ 10–11.

Class Counsel's costs were ultimately lower than authorized by the Settlement Agreement—only $8,141.81 out of the $25,000 provided by the Settlement Agreement. *See* Proposed Order, ECF No. 117-5 at 4.

Mr. Durham moved for final approval on May 12, 2022. *See* ECF No. 117. On June 16, 2022, the Court held a final approval hearing, where the Court indicated that it would grant final approval.

**II.   RULE 23 CERTIFICATION REQUIREMENTS**

In determining whether to grant final approval of a class action settlement, the Court must determine that (a) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (b) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.").

### A. The Class Meets the Requirements for Certification Under Rule 23

A class action is maintainable only if it meets the four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Mr. Durham seeks certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to Class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When it granted preliminary approval of this class action settlement, this Court concluded that these requirements were satisfied. *See* Preliminary Approval Order, ECF No. 116 at 2–3. The Court is not aware of any facts that undermine that conclusion, but reviews briefly each of the Rule 23 requirements again.

Under Rule 23(a)(1), the Court concludes that joinder of all Class members would be impracticable under the circumstances of this case. The class contains over 700 members. *See* Butler Decl., ECF No. 117-4 ¶ 6; *Floyd v. Saratoga Diagnostics, Inc.*, No. 20–CV–01520–LHK, 2021 WL 2139343, at *3 (N.D. Cal. May 26, 2021) ("[C]lasses of 40 or more are numerous enough.") (citations omitted).

The commonality requirement under Rule 23(a)(2) is met because the key issues in the case

1   are the same for all Class members, including whether Buggy Time, Meal Period Time, and Travel
2   Time was (1) compensable under California law and (2) compensated by Defendant.

3   Mr. Durham meets the typicality requirement under Rule 23(a)(3), because his alleged injuries arose from the same course of Defendant's conduct that led to the other Class members' injuries. *See* FAC, ECF No. 13; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (typicality requires that the claims of the class representative are "reasonably co-extensive with those of absent class members").

To determine Mr. Durham's adequacy under Rule 23(a)(4), the Court must resolve two questions: (1) do Mr. Durham and his counsel have any conflicts of interest with other Class members and (2) will Mr. Durham and his counsel prosecute the action vigorously on behalf of the Class? *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citations omitted). There is no evidence of any conflict of interest that would preclude Mr. Durham from acting as Class representative or his counsel from acting as Class Counsel. Further, the Court is not concerned that Class Counsel failed vigorously to litigate this action on behalf of the Class, particularly given that this action involved extensive and hard-fought motion practice.

Now turning to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The common questions in this case described above predominate over individual questions among the Class members. That individual calculations of damages are required does not preclude certification. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013). The Rule 23(b)(3) superiority inquiry looks to alternative methods of adjudication and whether maintenance of a class action would be fair and efficient. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). The Court finds that superiority is satisfied here because prosecuting or defending separate actions at this stage would be impractical and inefficient.

Accordingly, the Court concludes that the requirements of Rule 23 are met. Certification of the Class for settlement purposes is appropriate.

**B.     The Settlement is Fundamentally Fair, Adequate, and Reasonable**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a

certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* at 819 (internal quotation marks and citation omitted). In making that determination, the district court is guided by an eight-factor test articulated by the Ninth Circuit in *Hanlon*. Those factors are the following:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026–27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1026). "A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, No. 02–ML–1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (citations omitted).

### 1. Notice Was Adequate

The Court previously approved Mr. Durham's plan for providing notice to the Class when it granted preliminary approval of the class action settlement. *See* Preliminary Approval Order, ECF No. 116 at 3–4. Prior to granting preliminary approval, the Court carefully examined the proposed class notice and notice plan, and determined that they complied with Federal Rule of Civil Procedure 23 and the constitutional requirements of Due Process. *Id.* Plaintiff now provides a declaration from the case manager at the Settlement Administrator explaining the implementation of the plan. *See* Butler Decl., ECF No. 117-4. Based on that declaration, 767 class notices were

1  mailed, with 80 returned as undeliverable, and all but six of these (0.8% of total) mailed to updated

2  addresses. *Id.* ¶¶ 6, 9. The Settlement Administrator has additionally maintained a toll-free phone

3  line and a webpage for the settlement. *Id.* ¶ 4. Based on the implementation details of the notice

4  plan, the Court is satisfied that the Class has received the "best notice that is practicable under the

5  circumstances." Fed. R. Civ. P. 23(c)(2)(B).

### 2. *Hanlon* Factors

The Court now turns to the *Hanlon* factors. Under the first and fourth *Hanlon* factors, the Court considers the amount offered in settlement in light of the strength of Mr. Durham's case, weighing the likelihood of success on the merits and the range of possible recovery. *Hanlon*, 150 F.3d at 1026–27. Prior to filing of the notice of settlement, the Court had significantly narrowed Mr. Durham's theories of liability. *See, e.g.,* ECF No. 53. Further, the Court's decisions in the *Huerta* and *Griffin* Actions threatened to foreclose some of Mr. Durham's remaining claims. Class Counsel estimates that the maximum potential recovery in this case is approximately $6.6 million, so the settlement amount is around 12% of the estimated maximum potential recovery. *See* Kindem Decl., ECF No. 117-2 ¶ 3. The Court considers this proportion reasonable given the significant risks Mr. Durham faced if he had continued to litigate the case. Accordingly, the Court finds that the first *Hanlon* factor favors the fairness of the settlement.

Under the second *Hanlon* factor, the Court considers the risk, expense, complexity, and duration of litigation. *Hanlon*, 150 F.3d at 1026–27. As outlined above, this case presented significant risks and legal uncertainties, as demonstrated by the Court's orders in this case and in the *Huerta* and *Griffin* Actions. Additionally, this case has been pending for nearly four years; further dispositive motions were nearly guaranteed at the time of settlement, *see* ECF No. 103; and appeals like the one in *Griffin* could have required significant additional time and investment. Accordingly, the Court finds that the second *Hanlon* factor supports the fairness of the settlement.

Under the third *Hanlon* factor, the Court considers the risk of maintaining class action status throughout the trial. *Hanlon*, 150 F.3d at 1026–27. Prior to settlement, the Court had granted certification as to several classes. *See* ECF Nos. 80, 107. Mr. Durham argues that decertification was possible at a later stage of the case. S*ee* Motion, ECF No. 117-1 at 7, 13. The Court finds that

1    the third *Hanlon* factor provides marginal support for the fairness of the settlement.

2    Under the fifth *Hanlon* factor, the Court considers the extent of discovery completed and the
3    stage of the proceedings. *Hanlon*, 150 F.3d at 1026–27. Prior to settlement, the parties engaged in
4    significant discovery, including Sachs's production of extensive payroll and timekeeping data. *See*
5    *id.* at 4. Further, this case had reached the class certification stage following substantial motion
6    practice, and the parties were informed by the parallel *Huerta* and *Griffin* Actions. Accordingly,
7    the Court is satisfied that the parties were sufficiently familiar with the issues in this case to have
8    informed opinions regarding its strengths and weaknesses. The fifth *Hanlon* factor therefore
9    supports the fairness of the settlement.

10   Under the sixth *Hanlon* factor, the Court considers the experience and views of counsel.
11   *Hanlon*, 150 F.3d at 1026–27. Class Counsel's conclusion is that the settlement is fair and
12   reasonable. *Id.* at 4. Class Counsel has demonstrated their thorough understanding of the strengths
13   and weaknesses of this case and their extensive experience litigating prior wage and hour cases.
14   *See* Dion-Kindem Decl., ECF No. 117-2 ¶ 9; *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036,
15   1043 (N.D. Cal. 2007) (finding class counsel's recommendation in favor of settlement
16   presumptively reasonable because counsel demonstrated knowledge about the case and securities
17   litigation in general). Accordingly, the sixth *Hanlon* factor favors the fairness of the settlement.

18   Under the seventh *Hanlon* factor, the Court considers whether a governmental participant
19   was present in the case. *Hanlon*, 150 F.3d at 1026–27. Factor seven is neutral, since there was no
20   government participant in the case.

21   Under the eighth *Hanlon* factor, the Court considers the reaction of the Class members to
22   the proposed settlement. *Hanlon*, 150 F.3d at 1026–27. The Settlement Administrator mailed 761
23   class notices, and no objections have been filed and only one potential Class member opted out of
24   the Class. Butler Decl., ECF No. 117-4 ¶¶ 10–11. "A court may appropriately infer that a class
25   action settlement is fair, adequate, and reasonable when few class members object to it." *Knapp v.*
26   *Art*, 283 F.Supp.3d 823, 833–34 (N.D. Cal. 2017). Accordingly, the eighth *Hanlon* factor supports
27   the fairness of the settlement.

28   After considering the record as a whole guided by the *Hanlon* factors, the Court finds that

notice of the proposed settlement was adequate; the settlement is not the result of collusion; and that the settlement is fair, adequate, and reasonable.

### III. APPROVAL OF ATTORNEYS' FEES AND COSTS; SERVICE AWARD TO NAMED PLAINTIFF; AND SETTLEMENT ADMINISTRATOR FEES

Class Counsel seeks an award of $258,333 in attorneys' fees; $8,141.81 in costs; $5,000 as a service award to Mr. Durham; and $11,000 in Settlement Administrator fees. *See* Motion, ECF No. 117-1 at 7–8, 17–18; Proposed Order, ECF No. 117-5 at 4.

#### A. Attorneys' Fees and Costs

##### 1. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Bluetooth*, 654 F.3d at 942. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 2011). Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05–1777 MHP, 2009 WL 3720872, at

11

*4 (N.D. Cal. Nov. 3, 2009) (citations omitted).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941 (citations omitted). This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942 (citations omitted).

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus, even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. . . . [Courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C–11–00594–DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and citation omitted).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

**2. Discussion**

Class Counsel seeks (1) an award of attorneys' fees totaling $258,333, which is approximately 33% of the $775,000 gross settlement amount and (2) costs totaling $8,141.81—$4,799.52 to Peter R. Dion-Kindem, P.C. and $3,342.29 to the Blanchard Law Group, APC. *See* Motion, ECF No. 117-1 at 7–8; Proposed Order, ECF No. 117-5 at 4.

The Court first approves the $8,141.81 in costs. The Court has reviewed Class Counsel's

1  itemized lists of costs and finds that all expenses were necessary to the prosecution of this litigation. *See* Blanchard Decl., ECF No. 117-3 ¶¶ 4–6; Dion-Kindem Decl., ECF No. 117-2 ¶¶ 30–33.

Next, the Court considers the reasonableness of Class Counsel's attorneys' fees request. Class Counsel seeks attorneys' fees that represent 33% of the gross settlement amount, which is above the 25% benchmark in the Ninth Circuit. *Bluetooth*, 654 F.3d at 942. Class Counsel argues that several factors support the reasonableness of the amount of fees requested. *See* Motion, ECF No. 117-1 at 11–15. Class Counsel argues that the reasonableness of the requested fees is supported by (1) the substantial Class recovery; (2) the fact that Class Counsel is being paid entirely on a contingent basis; (3) the risks of this litigation (as outlined above); (4) the experience of Class Counsel, *see* Dion-Kindem Decl., ECF No. 117-2 ¶¶ 13–18; (5) the high caliber of Sachs's counsel; (6) the applicability of fee-shifting statutes to this case, specifically California Labor Code §§ 1197, 218.5, and 226(e); and (7) the lack of objectors. *See* Motion, ECF No. 117-1 at 11–15. Class Counsel also argues that the lodestar method supports the reasonableness of the requested fees, since it indicates a negative multiplier of 0.38. *See id.* at 15–17.

The Court finds Class Counsel's attorneys' fees request is reasonable. Under the percentage-of-recovery method, Class Counsel's fees request represents a larger percentage of the gross settlement amount (33%) than the Ninth Circuit benchmark (25%). *Bluetooth*, 654 F.3d at 942. But the Court finds that Class Counsel has provided ample justification for an above-benchmark award, particularly given the difficulty and risks of litigation in this case; the substantial recovery for the Class obtained by counsel; and the lack of objectors to the settlement. *See Vizcaino v. Microsoft Corp.*, 142 F.Supp.2d 1299, 1303–1306 (W.D. Wash. 2001), *aff'd* 290 F.3d 1043 (9th Cir. 2002); *In re Pacific Enters. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995). The lodestar cross-check method confirms the reasonableness of Class Counsel's requested fees. Class Counsel states that the total lodestar from inception of this case through settlement is approximately $686,437.50. Dion-Kindem Decl., ECF No. 117-2 ¶ 26. The hourly rates charged by Class Counsel—$875— have been approved by multiple courts across California for attorneys at a similar level of experience, *see* Motion, ECF No. 117-1 at 15 (listing cases), and the Court finds the number of hours expended to be reasonable, *see* Dion-Kindem Decl., ECF No. 117-2 ¶ 26. Using $686,437.50

1 as the lodestar results in a negative multiplier of 0.38. A negative multiplier, particularly one as small as 0.38, "strongly suggests the reasonableness of [a] negotiated fee." *Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, No. 19–cv–07087–DMR, 2021 WL 4133860, at *6 (N.D. Cal. Sep. 10, 2021) (quotation marks and citations omitted). Accordingly, the Court APPROVES an award of $258,333 in fees for Class Counsel.

Based on the above reasoning, the Court APPROVES an award of $258,333 in fees for Class Counsel and $8,141.81 in costs.

### B. Service Award

Mr. Durham seeks a service award of $5,000. *See* Motion, ECF No. 117-1 at 18–19. Service awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 849, 958–59 (9th Cir. 2009) (internal citation omitted).

In support of the requested service award, Mr. Durham provides a declaration from counsel indicating that he gathered documents, communicated with Class Counsel, and bore the financial risk of the litigation. *See* Dion-Kindem Decl., ECF No. 117-2 ¶ 37. Mr. Durham also argues that the requested service award is a negligible 0.645% of the settlement fund, which further supports its reasonableness. *See* Motion, ECF No. 117-1 at 19. At the June 16, 2022 hearing, Class Counsel further argued that the Court has approved similar service awards in other cases related to the California Flats Solar Project.

The Court finds that the requested $5,000 service award to Mr. Durham is reasonable. The service award is somewhat high, particularly given the average Class member recovery of $591. *See* Butler Decl., ECF No. 117-4 ¶ 13. However, given the considerable effort that Mr. Durham expended in furthering this case and the small portion of the settlement fund the requested service award represents, the Court finds that the $5,000 service award is reasonable. Accordingly, the Court APPROVES the $5,000 service award for Mr. Durham.

### C. Settlement Administrator Fee

Mr. Durham also seeks approval for paying $11,000 in fees to the Settlement Administrator.

*See* Motion, ECF No. 117-1 at 7. The Court preliminarily approved the requested Settlement Administrator fee award. *See* Preliminary Approval Order, ECF No. 116 at 6. Finding the requested Settlement Administrator fee reasonable, the Court APPROVES the $11,000 Settlement Administrator fee.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Mr. Durham's final approval motion is GRANTED;

(2) the Class is CERTIFIED for settlement purposes;

(3) Mr. Durham is APPOINTED as Class Representative;

(4) Lonnie C. Blanchard III of the Blanchard Law Group, APC and Peter R. Dion-Kindem of Peter R. Dion-Kindem, P.C. are APPROVED as Class Counsel;

(5) Simpluris, Inc. is APPROVED as Settlement Administrator;

(6) the Class Notice is APPROVED;

(7) the gross settlement amount of $775,000 is APPROVED, with the following approved amounts to be deducted from the gross settlement amount prior to distribution to the Class:

    a. $258,333 in attorneys' fees for Class Counsel;

    b. $8,141.81 in Class Counsel costs;

    c. $11,000 in fees for the Settlement Administrator;

    d. a $22,500 PAGA payment to the California Labor and Workforce Development Agency; and

    e. $5,000 for the service award to Mr. Durham;

(8) the method for distributing the settlement funds remaining after the above deductions is APPROVED;

(9) the Justice Gap Fund is APPROVED as the *cy pres* recipient; and

(10) the following Class member has timely opted out of the Settlement: Ken Hall, 602 Butler Dr., Eureka, MO 63025.

Dated: June 27, 2022

BETH LABSON FREEMAN
United States District Judge